## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____
                                 :

**SECURITIES AND EXCHANGE COMMISSION,** :
                                 :

          **Plaintiff,**        :

                                 :     **Civil Action No.**

          **v.**            :

                                 :     **07 CV 11275 (JGK/JCF)**

**DARRYL A. GOLDSTEIN and** :
**CHRISTOPHER L. O'DONNELL,** :
                                 :

          **Defendants.**    :
_____

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
## OPPOSITION TO DEFENDANT GOLDSTEIN'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.   The Complaint Properly States A Claim Upon Which Relief Can Be
     Granted ............................................................................................................. 2

     A.   The Standard For Deciding A Motion To Dismiss ......................................... 2

     B.   Goldstein's Argument Ignores Rule 12(b)(6) Standards ............................... 3

     C.   The Complaint Adequately Alleges Violations Of The Antifraud
          Provisions Of The Federal Securities Laws .................................................... 4

          1.  Goldstein Engaged In A Fraudulent Scheme ........................................... 5

          2.  Goldstein Made Material Misrepresentations ........................................... 7

          3.  Goldstein Made Material Omissions ......................................................... 9

II.  The Complaint Alleges A Claim Of Fraud With Particularity .............................. 12

     A.  The Pleading Requirements Under Rule 9(b) ................................................ 12

     B.  The Complaint Alleges Sufficient Facts To Support Its Claims ..................... 13

          1.  Scheme to Defraud Allegations ............................................................... 13

          2.  Material Misrepresentation And Omission Allegations ............................. 15

III. The Complaint Alleges Facts Supporting A Strong Inference Of
     Scienter ............................................................................................................. 16

     A.  The Standard For Pleading Scienter ............................................................. 16

     B.  The Complaint Adequately Alleges Scienter ................................................. 18

          1.  Goldstein Had A Motive And Opportunity To Commit Fraud ................... 18

          2.  Goldstein Acted With An Intent To Deceive Or Recklessness ................ 21

C.  The Complaint Also Adequately Alleges a Non-Scienter Claim....................25

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)..............................14

*Aaron v. SEC*, 446 U.S. 680 (1980)..................................................................12

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ..................................16

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 535 (3d Cir. 1999) ...........................17

*In re Alstom SA*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ......................................5

*Anitora Travel, Inc. v. Lapian*, 677 F. Supp. 209 (S.D.N.Y. 1988)...................20

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)..................................12

*Baxter v. A.R. Baron & Co.*, No. 94 Civ. 3913, 1996 WL 586338
   (S.D.N.Y. Oct. 11, 1996) ..................................................................19

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ......................................3

*In re Blech Sec. Litig.*, 961 F. Supp. 569 (S.D.N.Y. 1997).................................14

*CFTC v. Int'l Fin. Servs, LLC*, 323 F. Supp. 2d 482
   (S.D.N.Y. 2004)..................................................................................4

*Caiola v. Citibank, N.A., New York*, 295 F.3d 312 (2d Cir. 2002) ....................10

*In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36 (2d Cir. 2000)........................22, 23, 24

*In re Credit Suisse First Boston Corp. Sec. Litig.*, No. 97 CIV. 4760, 1998 WL
   734365 (S.D.N.Y. Oct. 20, 1998) ....................................................11

*Dreieck Finanz AG v. Sun*, No. 89 CIV. 4347, 1990 WL 11537
   (S.D.N.Y. Feb. 9, 1990) .............................................................20, 21

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)........................................5, 16

*Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168
   (2d Cir. 2004)......................................................................................2

*Ganino v. Citizens Utilities Co.*, 228 F.3d 154 (2d Cir. 2000) ..........................21

*In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004)................20

*Global Network Commc'n, Inc. v. City of New York*, 458 F.3d 150
    (2d Cir. 2006)........................................................................................4

*Gruntal & Co., Inc. v. San Diego Bancorp*, 901 F. Supp. 607 (S.D.N.Y. 1995)..............20

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993)..........................14

*In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281
    (S.D.N.Y. 2003)........................................................................10, 11

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*, 146 F.3d 66 (2d
    Cir. 1998)........................................................................................4

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ........................................................3

*Joffee v. Lehman Brothers, Inc.*, No. 04 Civ.3507, 2005 WL 1492101
    (S.D.N.Y. Jun. 23, 2005) ................................................................20

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001)..........................................18, 21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v Dabit*, 126 S. Ct. 1503 (2006) ................17

*In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845 (D. Md. 2005) ..................................7

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ..........................................2

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)........................................................ passim

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990) ......................................................13

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    No. 05 Civ. 9016(SAS), 2007 WL 528703 (S.D.N.Y. Feb. 20 2007) ........................20

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)......................................................15, 16

*Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979) ......................................................16

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007)................................................................4

*SEC v. Alexander*, 160 F. Supp. 2d 642 (S.D.N.Y. 2001) ................................................13

*SEC v. Boling*, No. CIV. A. 06-1329, 2007 WL 2059744 (D.D.C. Jul. 13, 2007)............18

*SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477 (S.D.N.Y. 2007).............4, 5, 16, 18

*SEC v. Dorozhko*, No. 07 CIV 9606, 2008 WL 126612 (S.D.N.Y. Jan. 8, 2008).............18

*SEC v. Druffner*, 353 F. Supp. 2d 141 (D. Mass. 2005) ............................................ passim

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) ................................................4

*SEC v. Gad*, No. 07 CIV 8385, 2007 WL 4437230 (S.D.N.Y. Dec. 17, 2007)................18

*SEC v. Gann*, No. 305CV0063L, 2006 WL 616005 (N.D. Tex. Mar. 13, 2006) ......6, 7, 13

*SEC v. Gold*, No. 05-CV-4713, 2006 WL 3462103 (E.D.N.Y. Aug. 18, 2006)................17

*SEC v. Goldsworthy*, No. 06 CIV. A. 10012, 2007 WL 4730345
    (D. Mass. Dec. 4, 2007) ..........................................................................................18

*SEC v. JB Oxford Holdings, Inc.*, No. CV-04-070084, 2004 U.S. Dist. LEXIS
    29494 (C.D. Ca. Nov. 10, 2004)..........................................................................7, 8, 9

*SEC v. Lyon*, 529 F. Supp. 2d 444 (S.D.N.Y. 2008).........................................................18

*SEC v. Power*, 525 F. Supp. 2d 415 (S.D.N.Y. 2007) ......................................................18

*SEC v. Prater*, 296 F. Supp. 2d 210 (D. Conn. 2003).......................................................17

*SEC v. U.S. Envtl., Inc.*, 82 F. Supp. 2d 237 (S.D.N.Y. 2000) .............................13, 14, 15

*SEC v. Zandford*, 535 U.S. 813 (2002) ..............................................................................6

*Santa Fe Indus., Inc. v. Green*, 430 U.S. 462 (1977)...........................................................5

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) .....................................13, 18

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ................................13, 21

*Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.*,
    404 U.S. 6 (1971).................................................................................................6, 7

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)............................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ...............................17

*In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993) ................................9, 10, 11

*In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327 (S.D.N.Y. 2007) ................................13

*Trussell v. United Underwriters, Ltd.*, 228 F. Supp. 757 (D. Colo. 1964) ........................12

*U.S. v. Chestman*, 947 F.2d 551 (2d Cir. 1991)..................................................12

*U.S. v. Mendoza*, 464 U.S. 154 (1984) ...........................................................4

*U.S. v. Russo*, 74 F.3d 1383 (2d Cir. 1996) .....................................................6

*U.S. v. Falcone*, 257 F.3d 226 (2d Cir. 2001)..................................................12

*Wedbush Morgan Sec., Inc. v. Robert W. Baird & Co.*, 320 F. Supp. 2d 123
    (S.D.N.Y. 2004) ..............................................................................20

## FEDERAL STATUTES

### SECURITIES EXCHANGE ACT OF 1934

Section 21, [15 U.S.C. §78u(a)(1)] ...............................................................17

Section 21D(b)(1), [U.S.C. §78u-4(b)(1)] ........................................................18

### FEDERAL RULES OF CIVIL PROCEDURE

Rule 8(f) ...............................................................................................3

Rule 12(b)(6)..........................................................................................2

### FEDERAL RULES OF EVIDENCE

Rule 201(b) ...........................................................................................4

The Securities and Exchange Commission ("Commission") hereby opposes the motion to dismiss filed by Defendant Darryl A. Goldstein ("Goldstein"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

From January 2002 until July 2003, Goldstein, a top financial advisor ("FA") at Morgan Stanley DW, Inc. ("MSDW"), defrauded over fifty mutual fund companies and their shareholders by engaging in deceptive acts designed to circumvent those funds' restrictions on market timing. Specifically, in an effort to conceal over 2,700 market-timing trades with a total trading volume exceeding $3.2 billion, Goldstein repeatedly and systematically employed a variety of deceptive practices, including, but not limited to, opening and trading in over seventy brokerage accounts, purchasing and trading through numerous variable annuity contracts, and using eight different FA identification numbers—for only two customers, Haidar Capital Management ("Haidar") and Millennium Partners ("Millennium").

Contrary to Goldstein's motion to dismiss, the complaint clearly establishes that his deceptive market-timing trading violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. First, with its allegations of Goldstein's participation in a fraudulent scheme to deceive mutual funds, and his material misrepresentations and omissions to those funds, the Commission has properly stated a claim upon which relief can be granted, pursuant to Rule 12(b)(6). Second, the Commission has also plead its fraud claims with particularity, pursuant to Rule 9(b). The Commission's claims are supported by detailed factual allegations, comprehensive charts, and specific examples

that far exceed the relevant pleading requirements.  Third, the complaint also adequately

alleges facts supporting a strong inference of Goldstein's scienter.  Specifically, the

complaint alleges that Goldstein had the motive and opportunity to commit the fraud.  In

fact, as a result of his deceptive market-timing practices, Goldstein generated $546,257 in

commissions or asset-based fees for himself—in less than two years.  Furthermore, the

complaint often alleges actual knowledge on the part of Goldstein and even when the

Commission relies on circumstantial evidence, the inference of his culpable knowledge is

strong.  Accordingly, the Court should deny Goldstein's motion to dismiss.

## ARGUMENT

## I.    The Complaint Properly States A Claim Upon Which Relief Can Be Granted

### A.    The Standard For Deciding A Motion To Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must

accept as true the allegations in the complaint and all reasonable inferences must be

drawn in the Commission's favor.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d

Cir. 2007).  The Court's function on a motion to dismiss is to "assess the legal feasibility

of the complaint, not to assay the weight of the evidence which might be offered in

support thereof."  *Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co.*, 375

F.3d 168, 176 (2d Cir. 2004).  Ultimately, the complaint need only:  (i) include a short

and plain statement of the claim showing that the Commission is entitled to relief; and (ii)

give Goldstein fair notice of what the Commission's claim is and the grounds upon which

it rests.  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002).

While the Federal Rules allow a court to dismiss a cause of action for "failure to

state a claim upon which relief can be granted," Fed.R.Civ.P. 12(b)(6), they also require

all pleadings to be "construed so as to do substantial justice," Fed.R.Civ.P. 8(f).  Given

the Federal Rules' simplified standard for pleading, a Rule 12(b)(6) motion must be

denied unless the Commission's claim is not "plausible on its face;" that is, unless the

Commission's allegations, analyzed collectively, do not "raise a right to relief above the

speculative level."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007);

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

### B.    Goldstein's Argument Ignores Rule 12(b)(6) Standards

As a preliminary matter, it is important to note that Goldstein's motion frequently

strays beyond the boundaries of Rule 12(b)(6) and becomes more akin to an argument for

summary judgment pursuant to Rule 56.  Where Goldstein ignores the limitations of Rule

12(b)(6), as identified below, his contentions should be disregarded.

First, Goldstein improperly argues "facts" relating to matters not alleged in the

complaint.  He makes the following unsupported claims: mutual funds encouraged,

permitted, and entered into agreements to facilitate market timing, Goldstein Br. at 2, 13;

his trading activity was "in compliance with MSDW's policies and his supervisors had

unimpeded visibility and actual knowledge of the trading, and never told him to stop," *id.*

at 13; joint FA identification numbers are common in the industry, *id. at* 17; and he

executed trades at the direction of his clients, *id.* at 19.  These and other unsupported

factual assertions should not be considered for purposes of Goldstein's motion to dismiss.

Second, Goldstein relies heavily on findings in documents not properly before the

Court.  Specifically, he urges this Court to take judicial notice of factual findings found in

settled Commission orders against Haidar and five mutual funds, to support his assertion

that he lacked the requisite scienter.  Goldstein Br. 10-13.  In considering a Rule 12(b)(6)

motion, a court is permitted to take judicial notice of facts "not subject to reasonable dispute." Fed.R.Evid. 201(b).[1]  However, a court is not permitted to take judicial notice of documents filed in another proceeding for the truth of the matters asserted in the other litigation, but only to establish the fact of such litigation and related filings.[2]  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Global Network Commc'n, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (finding error in district court's reliance on external materials to make a finding of fact that controverted factual allegations set out in the complaint); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).  Under these circumstances, the settled Commission orders (Goldstein Br., Ex. A-F) should not be considered, and certainly the findings found in those orders cannot be deemed true for purposes of Goldstein's motion to dismiss.

**C.    The Complaint Adequately Alleges Violations Of
The Antifraud Provisions Of The Federal Securities Laws**

The Commission alleges that Goldstein violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder ("Antifraud Provisions").  The required elements of an action pursuant to Section 17(a) and Section 10(b) are substantially the same.  *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996); *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 490 (S.D.N.Y. 2007) (a

---

[1]     Courts are advised to exercise caution in taking judicial notice of adjudicative facts because the effect of such a determination is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence.  Fed.R.Evid. 201(b), Advisory Committee Notes.

[2]     Even if this were not the case, the purported findings in question are not appropriate for judicial notice because they are derived from a settled and unrelated proceeding, the orders explicitly state that their findings "are not binding on any other person or entity in this or any other proceeding" (Goldstein's Br., Ex. A-F at n.1), and the defendants in those proceedings consented to the entries of the orders "without admitting or denying the findings [t]herein" (*id.* at II).  Furthermore, his attempt to reference factual findings from *settlements* with the Commission to support his non-scienter arguments is all the more baffling given that it is well-established that non-mutual collateral estoppel – in the context of *litigated* matters – cannot be asserted against the Commission.  *See U.S.  v. Mendoza*, 464 U.S. 154, 162 (1984); *CFTC v. Int'l Fin. Servs ,LLC*, 323 F. Supp. 2d 482, 496 n.9 (S.D.N.Y. 2004).  Finally, the findings have little if any independent relevance because they do not mention him, they only pertain to five of the over fifty mutual funds harmed, and the fact that others may have engaged in illegal acts is not a defense.

complaint that is sufficient to state a claim pursuant to Section 10(b) and Rule 10b-5 is also sufficient to state a claim pursuant to Section 17(a)(1)).  To establish a violation of the Antifraud Provisions, the Commission must show that:  1) Goldstein engaged in fraudulent conduct; 2) in connection with the purchase or sale of securities; 3) through the means or instrumentalities of transportation or communication in interstate commerce or by use of the mails; and 4) with the requisite scienter.  *Id.*

Goldstein argues that the Commission has failed to plead sufficient facts under a cognizable legal theory of fraud or deception.  Goldstein Br. at 5.  Furthermore, he denies engaging in fraudulent conduct and claims that the complaint must be dismissed because it fails to allege material misrepresentations or omissions.  *Id.* at 2, 5, 16.  However, as explained below, his motion should be denied because it completely disregards the Commission's fraudulent scheme allegation, ignores the facts alleged in the complaint, and is inconsistent with established precedent.

### 1.    Goldstein Engaged In A Fraudulent Scheme

The complaint alleges that Goldstein engaged in a scheme to defraud mutual fund companies, in violation of Section 17(a)(1) and (3) of the Securities Act and Rule 10b-5(a) and (c) pursuant to the Exchange Act.[3]  To plead a scheme to defraud, the Commission must allege that Goldstein engaged in a manipulative device or contrivance.  *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199 nn.20-21 (1976).  This cause of action was intended to cover "the full range of ingenious devices that might be used to manipulate."  *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977).  The Supreme Court has emphasized that this cause of action "should be construed not technically and

---

[3]    "Rule 10b-5(a) or (c) does not require an allegation that the defendant made a statement, as liability is premised on a course of deceptive conduct undertaken by the defendant, rather than on misrepresentations or omissions."  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005).

restrictively, but flexibly to effectuate its remedial purposes." *SEC v. Zandford*, 535 U.S. 813, 819 (2002); *see also U.S. v. Russo,* 74 F.3d 1383, 1390 (2d Cir. 1996).

Goldstein argues that the Commission's claims relating to his market-timing trading should be dismissed because the deceptive practices alleged in the complaint "do[] not necessarily constitute fraud." Goldstein Br. at 16. Specifically, he argues that there are legitimate purposes for using more than one FA identification number and opening multiple accounts. *Id.* at 2, 16. However, Goldstein concedes, as he must, that market-timing "runs afoul of the federal securities laws when it is done via fraudulent or misleading means." *Id.* at 2. Accordingly, "the relevant inquiry is whether, while executing market-timing trades, the Defendant[] committed fraud by engaging in deceptive practices." *SEC v. Gann*, No. 305CV0063L, 2006 WL 616005, at *7 (N.D. Tex. Mar. 13, 2006); *see also Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971) ("Since practices constantly vary and where practices legitimate for some purposes may be turned to illegitimate and fraudulent means, broad discretionary powers in the regulatory agency have been found practically essential.").

In this case, the complaint alleges that Goldstein knew or was reckless in not knowing that mutual fund companies imposed restrictions on excessive trading and monitored trading in their funds to detect and prevent market timing. Compl. ¶ 3. Moreover, early on in his association with Haidar and Millennium ("Clients"), he knew or was reckless in not knowing that they were engaged in trading practices that deceived funds. *Id.* Indeed, his role in the fraudulent scheme was more than mechanically executing orders; he also advised his Clients how to conceal their trading activity and circumvent funds' restrictions on market timing. *Id.* ¶¶ 1, 3. In this way, by trading

through over seventy accounts, numerous variable annuity contracts, and eight FA identification numbers, he intended to, and did, make it more difficult for funds to detect and prevent his Clients' deceptive market-timing trading. *Id.* ¶¶ 3, 30, 32-37, 40-41.

Accepting these allegations to be true and in the light most favorable to the Commission, the timing, manner, and use of these trading practices by Goldstein constitute manipulative devices prohibited by the Antifraud Provisions. Courts have denied motions to dismiss where similar market-timing schemes have been alleged. *See, e.g., Gann*, 2006 WL 616005, at *7 (use of multiple accounts, FA identification numbers, and smaller trades to evade trading restrictions); *SEC v. Druffner*, 353 F. Supp. 2d 141, 146 (D. Mass. 2005) (use of multiple FA identification numbers and accounts with misleading names to evade trading restrictions); *In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845, 856 (D. Md. 2005); *SEC v. JB Oxford Holdings, Inc.*, No. CV-04-070084, 2004 U.S. Dist. LEXIS 29494, at *17-18 (C.D. Ca. Nov. 10, 2004) (use of multiple accounts, FA identification numbers, and office codes to evade trading restrictions).

## 2.    Goldstein Made Material Misrepresentations

The complaint also alleges that Goldstein made material misrepresentations to mutual fund companies—*i.e.,* concerning his use of multiple accounts and FA identification numbers—when executing trades for his Clients, to conceal their excessive trading activity and to circumvent mutual funds' restrictions on market timing, in violation of Section 17(a)(2) of the Securities Act and Rule 10b-5(b) of the Exchange Act. He argues that the Commission's claims relating to this cause of action should be dismissed because the statements made by him to funds were "literally true." Goldstein Br. at 14, n.5. However, this argument is legally inadequate and factually inaccurate.

The complaint alleges that Goldstein made false and misleading statements to mutual fund companies in the account opening process to conceal his Clients' trading activity and circumvent mutual funds' market-timing restrictions. Compl. ¶¶ 1, 3, 4. In less than eighteen months, Goldstein opened at least fifty-nine MSDW accounts for Haidar and thirteen for Millennium. *Id.* ¶ 33. All of the Millennium accounts and the majority of the Haidar accounts bore the names of limited liability companies formed to facilitate their market-timing trading. *Id.* The use of these companies and their names were misleading because they had no apparent relationship to Haidar and Millennium, thereby preventing mutual funds from easily associating the Clients with their excessive trading. *Id.* These accounts allowed him to invest a larger amount of his Clients' money in a target mutual fund without triggering the fund's surveillance threshold. *Id.* ¶ 32. Moreover, when their market-timing trades were detected by the fund, he could continue to execute trades in the same fund by shifting money to his Clients' other accounts, despite the mutual funds attempts to block their trading. *Id.* The number, timing and manner in which these accounts were used demonstrate that Goldstein knowingly or recklessly made these false and misleading statements. *Id.* ¶ 34-35, 43, Attachment A.

Similarly, the complaint alleges that Goldstein made false and misleading statements to mutual funds by opening accounts and executing trades using multiple FA identification numbers to further conceal his Clients' trading and circumvent funds' market-timing restrictions. *Id.* ¶¶ 25, 36. By using different FA identification numbers, he created the misleading impression that the trades were being placed by different brokers, thereby making it harder for funds to detect and prevent him from executing his Clients' market-timing trades. *Id.* ¶ 37. The number of FA identification numbers used, the

timing in which the joint production agreements were entered into, the manner in which the joint numbers were coded, the use of a retiring FA's identification number, and the non-existent role the other brokers associated with these agreements had in establishing or servicing the Clients' accounts demonstrate that he knowingly or recklessly made these false and misleading statements. *Id.* ¶¶ 30, 32-33, 36-39, Attachment A.

Accepting these allegations to be true and viewing them in the light most favorable to the Commission, the complaint alleges ample facts to support the claim that Goldstein made misrepresentations to countless mutual funds to evade their trading restrictions. Furthermore, it is reasonable to infer that the actual identity of the broker executing excessive market-timing trades and the clients for whom the trades were placed were material facts because mutual fund prospectuses imposed restrictions on market timing or excessive trading, and mutual funds monitored trading activity in their funds, and attempted to enforce their trading restrictions. *Id.* ¶¶ 2, 4, 22-23, 42.

### 3.    Goldstein Made Material Omissions

The complaint also alleges that Goldstein made material omissions—*i.e.,* concerning his use of multiple accounts and FA identification numbers—when executing trades for his Clients, to conceal their excessive trading and to circumvent mutual funds' restrictions on market timing. Section 17(a)(2) of the Securities Act and Rule 10b-5(b) of the Exchange Act provide that, when making statements, a speaker must not omit "to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading." An omission is actionable under federal securities laws when the defendant is subject to a duty to disclose the omitted facts. *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993). Goldstein asserts that the

9

complaint lacks any allegations that he "breached a duty to disclose information concerning his use of multiple FA numbers." Goldstein Br. at 14; *see also id.* at 3. This erroneous view reflects a misunderstanding of well-established law.

"The initial inquiry in each case is what duty of disclosure the law should impose upon the person being sued." *In re Initial Pub. Offering Sec. Litig.,* 241 F. Supp. 2d 281, 381 (S.D.N.Y. 2003). As a preliminary matter, where a defendant has engaged in conduct that amounts to a scheme to defraud pursuant to Rule 10b-5(a) and (c), that fraudulent misconduct creates an independent duty to disclose. *In re IPO,* 241 F. Supp. 2d at 381-82 (finding independent duty to disclose in the market manipulation context). This "duty to disclose falls on *all* parties aware of the manipulation, or who take advantage of it" because "participants in the securities markets are entitled to presume that *all* of the actors are behaving legally; silence that conceals illegal activity is intrinsically misleading and (presuming the illegality is also material) is *always* violative of Rule 10b-5(b)." *Id.* at 382 (emphasis added).

Even in cases where an independent duty is not readily apparent, the securities laws give rise to a duty to disclose any information necessary to make an individual's voluntary statements not misleading. *Druffner,* 353 F. Supp. 2d at 148 (citing Rule 10b-5(b) in rejecting market-timing brokers' arguments that they had no duty to disclose to mutual funds that "they were using multiple account numbers and FA numbers"). Accordingly, if a defendant chooses to convey relevant and material information, he is required to do so completely and truthfully. *Caiola v. Citibank, N.A.*, New York, 295 F.3d 312, 331 (2d Cir. 2002) (holding that "the lack of an independent duty is not . . . a defense to Rule 10b-5 liability because upon choosing to speak, one must speak truthfully

about material issues"); *In re Credit Suisse First Boston Corp. Sec. Litig.*, No. 97 CIV. 4760, 1998 WL 734365, at *6 (S.D.N.Y. Oct. 20, 1998) (Koeltl, J.) ("Rule 10b-5 creates a statutory duty to speak the full truth when a defendant undertakes to say anything."). A duty to disclose also arises when disclosure is necessary to make prior statements not misleading or to update statements that have become misleading due to intervening events. *In re Time Warner*, 9 F.3d at 267-68.

In this case, it is reasonable to infer from the Commission's allegations that information concerning the true identities of a broker placing market-timing trades and the clients for whom the trades were placed was material because mutual funds imposed restrictions on market timing and excessive trading, monitored such trading activity in their funds, and attempted to enforce those trading restrictions. Compl. ¶¶ 2, 4, 22-23, 42. Accordingly, by executing his Clients' market-timing trades in mutual funds, he had a duty to disclose to those funds that he was using over seventy accounts often with different (and unrelated) names and eight different FA identification numbers—for just two clients. *Id.* ¶¶ 30, 33, 36, 38. This duty arose in a number of ways.

First, as discussed in section I.C.1, Goldstein made material misrepresentations and omissions to conceal and effectuate a scheme to defraud various mutual funds and their shareholders. As a result, Goldstein had an independent duty to disclose his use of multiple FA identification numbers and accounts. *See In re IPO*, 241 F.Supp.2d at 381.

Second, Goldstein voluntarily assumed a duty to disclose these facts when he submitted information about his Clients' transactions to the mutual fund companies. Goldstein was responsible for opening accounts and executing trades through these accounts. Compl. ¶¶ 3, 4, 32-33, 36. In executing these transactions, he assumed a duty

11

not to omit anything which would make the information submitted to the mutual funds materially misleading. *See Druffner,* 353 F. Supp. 2d at 148.

Third, once Goldstein started to submit his Clients' trade information to the mutual funds, he had a continuing duty to disclose all information necessary to make those initial representations not misleading. The complaint alleges that, early on, Goldstein knew or was reckless in not knowing that his Clients engaged in trading practices intended to deceive funds. *Id.* ¶ 3. Accordingly, even if he was initially unaware of the misleading and deceptive nature of the market-timing trades, once he became aware of it he had a duty to disclose it. That disclosure obligation grew over time, especially considering that Goldstein received over 131 block and bar notices from mutual funds attempting to prevent his Clients' market-timing trading. *Id.* ¶42.

Therefore, the complaint properly alleges that Goldstein failed to disclose material facts necessary to make the transactional information that he provided to mutual funds, in connection with his Clients' market-timing trades, not misleading. In this regard, it does not matter whether or not he had a fiduciary relationship with the mutual funds he defrauded and their shareholders. *Aaron v. SEC*, 446 U.S. 680, 695 (1980) (Section 10(b) applies with equal force to both fiduciary and nonfiduciary transactions).[4]

## II.     **The Complaint Alleges A Claim Of Fraud With Particularity**

### A.     **The Pleading Requirements Under Rule 9(b)**

---

[4]     Significantly, the cases Goldstein relies on to support its fiduciary duty argument are irrelevant insider trading cases, *see U.S. v. Chestman*, 947 F.2d 551 (2d Cir. 1991); *U.S. v. Falcone*, 257 F.3d 226, 234 (2d Cir. 2001), antiquated cases which have no authority in this Circuit, *see Trussell v. United Underwriters, Ltd.*, 228 F. Supp. 757, 763 (D. Colo. 1964), or cases which actually support the Commission's position, *see Backman v. Polaroid Corp.*, 910 F.2d 10, 20-21 (1st Cir. 1990) (confirming that a duty to disclose material information arises to render prior statements not misleading or to update statements that have become misleading due to intervening events).

Because the Commission's claims against Goldstein involve fraud, the allegations in the complaint must satisfy Rule 9(b).  Rule 9(b) provides:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The purpose of this rule is to provide a defendant with fair notice of a plaintiff's claim.  *E.g., Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *SEC v. Alexander*, 160 F. Supp. 2d 642, 649 (S.D.N.Y. 2001).  However, the courts have acknowledged Rule 9(b)'s limited breadth, noting that it "must be read together with Rule 8(a), which requires only a short plain statement of the claim for relief."  *SEC v. U.S. Envtl., Inc.*, 82 F. Supp. 2d 237, 240 (S.D.N.Y. 2000) (*quoting Ouaknine v. MacFarlane*, 897 F. 2d 75, 79 (2d Cir. 1990)).  Ultimately, Rule 9(b) does not require plaintiffs to set out in detail each and every fact upon which they base their claim or plead the evidence that they will use to prove the facts alleged at trial.  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001); *In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327, 335 (S.D.N.Y. 2007).

## B.     The Complaint Alleges Sufficient Facts To Support Its Claims

Contrary to Goldstein's assertions that the complaint's allegations are lacking the requisite specificity (Goldstein Br. at 3, 9), each of the Commission's claims is supported by detailed factual allegations (Compl. ¶¶ 1-45), comprehensive charts (*id.* ¶¶ 33, 38, Attachment A), and specific examples (*id.* ¶ 43) that far exceed the relevant pleading requirements.  *See, e.g., Gann*, 2006 WL 616005, at *5; *Druffner*, 353 F. Supp. 2d at 148.

### 1.     Scheme To Defraud Allegations

In cases arising from a fraudulent scheme, a complaint must allege, "to the extent possible, what manipulative acts were performed, which defendants performed them,

when the manipulative acts were performed, and what effect the scheme had on the market." *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007); *see also In re Blech Sec. Litig.*, 961 F. Supp. 569, 580 (S.D.N.Y. 1997). Because the details of a scheme may only be known by the defendants, courts in this circuit apply a relaxed pleading standard. *See, e.g., IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993); *U.S. Envtl., Inc.*, 82 F. Supp. 2d at 240 (stating that "slavish satisfaction of these judicially fashioned elements would make a plaintiffs task impossible in many cases" not involving misrepresentations). Accordingly, it is not necessary to plead every manipulative stock trade to satisfy Rule 9(b). The Commission need only plead detailed descriptions of a few sample trades supplemented by broad allegations of the conduct claimed to be manipulative. *U.S. Envtl.*, 82 F. Supp. 2d at 240.

In this case, as discussed in section I.C.1, the complaint adequately alleges facts with particularity that establish a scheme to defraud, including: what market timing is (Compl. ¶¶ 2, 17-19); the harm caused by market timing (*id.* ¶¶ 2, 20-21); the trading restrictions imposed by mutual funds (*id.* ¶¶ 2, 22); their efforts to monitor trading activity within their funds (*id.* ¶¶ 2, 23); their efforts to enforce these trading restrictions (*id.* ¶¶ 2, 23); his efforts to avoid detection while executing trades that violated trading restrictions found in mutual funds' prospectuses (*id.* ¶¶ 1, 3, 4, 6, 32-33, 36, 40, 43); the clients for which he executed the trades (*id.* ¶¶ 12, 14, 30); a list of the mutual fund complexes he executed trades in, along with a description of the trading activity (*id.* ¶ 38); a list and a brief description of the block and bar notices issued by funds to enforce their trading restrictions (*id.* ¶ 42, Attachment A); his efforts to circumvent the notices issued by mutual funds (*id.* ¶¶ 32-33, 37, 42-43, Attachment A); a list and detailed

description of his trading activity following the issuance of each notice (*id.* Attachment A); a list and a brief description of the accounts he opened and executed market-timing trades through (*id.* ¶ 33); how opening and trading in multiple brokerage accounts deceived mutual funds (*id.* ¶¶ 32-35); how trading using different FA identification numbers deceived funds (*id.* ¶¶ 36-39); how trading through variable annuity contracts deceived funds (*id.* ¶¶ 26-29, 40-41); what motivated him to engage in the fraudulent conduct (*id.* ¶¶ 1, 30, 45); and when the deceptive acts occurred (*id.* ¶¶ 30, 32-33, 35, 42-43, Attachment A). These allegations far exceed the Rule 9(b) pleading requirements.

### 2.    Material Misrepresentation And Omission Allegations

In cases where a claim rests on material misrepresentations or omissions, a complaint must allege: what statements or omissions were made, which defendant made them, where and when the statements or omissions were made, and why the statements or omissions were fraudulent. *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

In this case, as discussed in sections I.C.2 and 3, the complaint adequately alleges facts with particularity that establish material misrepresentations and omissions, including: what misrepresentations or omissions were made (Compl. ¶ 4); Goldstein's role in making them (*id.* ¶¶ 3-4, 12, 14); how they generally deceived mutual funds (*id.* ¶¶ 3-4, 6); the client for which they were made (*id.* ¶¶ 12, 14, 30); a list of the mutual funds that Goldstein made them to, along with a description of the related trading activity (*id.* ¶ 38); a list and brief description of the accounts Goldstein made them about (*id.* ¶ 33); how opening and trading in multiple brokerage accounts misled mutual funds (*id.* ¶¶ 32-35); how trading using different FA identification numbers misled mutual funds (*id.* ¶¶ 36-39); what motivated Goldstein to make them (*id.* ¶¶ 1, 30, 45); and key dates

associated with the misrepresentations or omissions (*id.* ¶¶ 30, 32-33, 35, 42-43,

Attachment A).  These allegations far exceed the Rule 9(b) pleading requirements.

## III.    The Complaint Alleges Facts Supporting A Strong Inference Of Scienter

### A.    The Standard For Pleading Scienter

Rule 9(b) does not by its terms require particularity in pleading scienter.  "Malice,

intent, knowledge, and other condition of mind may be averred generally."  This is the

standard that applies in Commission enforcement actions.

In 1979, to address concerns about groundless *private* securities fraud actions, the

Second Circuit developed a heightened pleading requirement that a private complaint

"supply a factual basis" that "give[s] rise to a strong inference that the defendants" had

the required state of mind.  *See Ross v. A.H. Robins Co.*, 607 F.2d 545, 557, 558 (2d Cir.

1979).  That state of mind is scienter, "a mental state embracing an intent to deceive,

manipulate or defraud."  *Ernst & Ernst*, 425 U.S. at 193.  Under the Second Circuit's

"strong inference" standard, the principal inquiry at the motion to dismiss stage is

whether all of the facts alleged, taken collectively, give rise to "a strong inference of

fraudulent intent," not whether any individualized allegation, analyzed in isolation, meets

the standard.  *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).  The requisite

strong inference of fraudulent intent can be established by "alleging facts (1) showing

that the defendant had both a motive and opportunity to commit the fraud or (2)

constituting strong circumstantial evidence of conscious misbehavior of recklessness."

*Collins & Aikman Corp.*, 524 F. Supp. 2d at 487.

In the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress

enacted a strict state of mind pleading standard for private securities actions.  The

PSLRA requires that a private plaintiff state "with particularity" facts giving rise to a "strong inference" of scienter. *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) ("even in jurisdictions already employing the Second Circuit standard, the [PSLRA's] additional requirement that plaintiffs state facts 'with particularity' represents a heightening of that standard"); *accord Novak v. Kasaks*, 216 F.3d 300, 310 (2d Cir. 2000). Recently, the Supreme Court held that a private complaint will survive the PSLRA "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).

On the faulty premise, unsupported by any decision by the Second Circuit, that the pre-PSLRA "strong inference" standard applies to actions brought by the Commission, and despite the fact that the PSLRA does not apply to such actions,[5] Goldstein nonetheless asks this Court to extend *Tellabs*' elevated requirements for pleading scienter to this case. Goldstein Br. at 6-8. An extension of *Tellabs* to Commission enforcement actions is impermissible and would contravene the policy underlying the different set of pleading requirements, recognized by the Supreme Court itself, which Congress established for private actions under the PSLRA.[6]

---

[5]     The PSLRA does not apply because this case is brought by the Commission rather than a private party. *SEC v. Gold*, No. 05-CV-4713, 2006 WL 3462103, at *5 (E.D.N.Y. Aug. 18, 2006) ("It is well-settled that the SEC is not a private litigant and, thus, is not subject to the heightened scienter pleading requirements of the Private Securities Litigation Reform Act…." ); *SEC v. Prater*, 296 F. Supp. 2d 210, 215 (D. Conn. 2003) ("Since actions brought by the SEC are not considered 'private litigation,' the standard imposed in the PSLRA for pleading scienter does not apply to the SEC.").

[6]     First, the Supreme Court rejected the notion that the PSLRA is merely an adoption of pre-PSLRA Second Circuit case law and made clear that its decision in *Tellabs* was interpreting only the PSLRA and its private action provisions, "geared to" Congress's goal of "curb[ing] perceived abuses of the §10(b) private action." *See Tellabs*, 127 S. Ct. at 2504, 2508, 2509. Second, Congress charged the Commission with primary responsibility for enforcing the federal securities laws and protecting the integrity of the nation's capital markets, and the concerns that Congress was addressing when it enacted the PSLRA did not (and do not) extend to Commission enforcement proceedings. *Compare id.* at 2504, 2508 *and Merrill Lynch, Pierce, Fenner & Smith, Inc. v Dabit*, 126 S. Ct. 1503, 1510-11 (2006) *with* 15 U.S.C. §§ 78u(a)(1),

17

Nonetheless, even if the *Tellabs* standard applies to the Commission's scienter allegations,[7] the Commission has satisfied the standard and the Court can still find that the Commission's allegations give rise to a strong inference of scienter.

**B.    The Complaint Adequately Alleges Scienter**

**1.    Goldstein Had A Motive And Opportunity To Commit Fraud**

Allegations of motive are sufficient if they "entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).  Plaintiffs "must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Id.; see also In re Scholastic Corp. Sec. Litig.*, 252 F.3d at 74 ("Motive is the stimulus that causes a person or entity to act or to fail to act.  Such stimulus ordinarily anticipates a concrete benefit defendant would realize by his conduct.").  Opportunity "entail[s] the means and likely prospect of achieving concrete benefits by the means alleged." *Novak*, 216 F.3d at 307.

---

78u(d)(1)-78u(d)(5).  Accordingly, it is completely consistent with Congress's intent, and the Supreme Court's reasoning in *Tellabs*, for the elevated pleading standard to apply only to private lawsuits brought under the PSLRA.  Third, there are already numerous differences between Rule 9(b) and the PSLRA in terms of pleading requirements, and, therefore, declining to extend *Tellabs* to a Commission action would not create an unprecedented gap between the two.  *See, e.g.*, 15 U.S.C. §§ 78u-4(b)(1), 78u-5(c)(1).

[7]    The Commission is unaware, as of the date of this filing, of any court in the Second Circuit that has addressed the question of whether *Tellabs*' standard for pleading scienter applies to Commission enforcement proceedings.  In *Collins & Aikman Corp.*, the court noted, in a decision denying a motion to dismiss, that "[i]t is unclear whether district courts must now find that the inference of scienter raised in actions not governed by the PSLRA, but governed by Rule 9(b), be at least as compelling as any other inference."  524 F. Supp. 2d at 488.  The court declined to reach "this thorny (albeit interesting) issue" because the Commission had pled scienter even under this heightened standard.  *Id.*  Other post-*Tellabs* courts have ruled on motions to dismiss in Commission enforcement actions without discussing *Tellabs*. *See, e.g., SEC v. Dorozhko*, No. 07 CIV 9606, 2008 WL 126612 (S.D.N.Y. Jan. 8, 2008); *SEC v. Lyon*, 529 F.Supp.2d 444 (S.D.N.Y. 2008); *SEC v. Gad*, No. 07 CIV 8385, 2007 WL 4437230 (S.D.N.Y. Dec. 17, 2007); *SEC v. Power*, 525 F.Supp.2d 415 (S.D.N.Y. 2007); *but see SEC v. Boling*, No. 06 CIV. A. 1329, 2007 WL 2059744, at *6 (D.D.C. Jul. 13, 2007) (citing *Tellabs* three weeks after that decision was published for the proposition that a court must look at scienter allegations collectively, but doing so without any briefing by the parties on the issue); *SEC v. Goldsworthy*, No. 06 CIV. A. 10012, 2007 WL 4730345, at * 15 (D. Mass. Dec. 4, 2007) (following the *Tellabs* standard in the context of a motion for summary judgment and thereby adopting a more *plaintiff*-friendly pleading standard as previous First Circuit jurisprudence required courts to dismiss complaints if competing inferences were equally plausible).

In this case, the complaint adequately alleges that Goldstein had a motive to commit fraud; namely, that the compensation and fees he earned were directly linked to the amount of assets that were used to deceptively market time mutual funds.  Compl. ¶¶ 1, 25, 30, 32.  Indeed, in less than 20 months, Goldstein earned $546,257 from placing deceptive market-timing trades for his Clients, *id*. ¶ 45, a substantial benefit that was undoubtedly "concrete and personal" to him, and therefore sufficient to demonstrate motive.  *See Baxter v. A.R. Baron & Co.*, No. 94 Civ. 3913, 1996 WL 586338, at *3 (S.D.N.Y. Oct. 11, 1996) (Koeltl, J.) (finding motive properly pled with allegations that broker "realized commissions from the allegedly fraudulent sales of securities").

Although Goldstein does not dispute that he had an opportunity to commit fraud, he erroneously claims that the Complaint's allegations only muster the generic motive of "increased compensation," Goldstein Br. at 9, which is insufficient to create a strong inference of scienter.  However, far from alleging a non-particularized motive, the Complaint definitively alleges that Goldstein handsomely profited from his fraudulent market-timing trades as his compensation was directly tied to the amount of assets that his Clients dedicated to such deceptive activity.  Compl. ¶¶ 1, 25, 30, 32, 45.  As such, the more assets that Goldstein was able to deceptively place – and continue placing – in mutual funds, the more commissions he generated for himself.  Accordingly, Goldstein opened at least seventy different Haidar and Millennium accounts and used eight different FA identification numbers to invest a larger amount of his Clients' assets in targeted mutual funds and to continue to place his Clients' market-timing trades in those funds, despite their repeated attempts to block such investments.  *Id.* ¶¶ 33, 36.

Accepting these allegations to be true and viewing them in the light most favorable to the Commission, it is reasonable to infer that had Goldstein not engaged in these deceptive market-timing practices, and abided by the mutual funds' restrictions and subsequent block and bar notices, Goldstein would not have earned those asset-based commissions and would have risked losing his Clients' business altogether.[8]  Courts have found such allegations sufficient to plead motive.  *See Wedbush Morgan Sec., Inc. v. Robert W. Baird & Co.*, 320 F. Supp. 2d 123, 130 (S.D.N.Y. 2004) (Koeltl, J.) (finding broker-dealer's motive to knowingly assist a client in a fraudulent scheme that "brought substantial business to" the broker-dealer was sufficient to show scienter); *Gruntal & Co., Inc. v. San Diego Bancorp*, 901 F. Supp. 607, 613-14 (S.D.N.Y. 1995) (alleging that broker was "eager to establish and build a client base and generate commission fees" and could thus be receptive to participating in fraudulent activity adequately pled motive).[9]  Thus, "[a]ny facts that might call these inferences into question should be asserted, at the earliest, after discovery."  *Dreieck Finanz AG v. Sun*, No. 89 CIV. 4347, 1990 WL 11537, at * 13 (S.D.N.Y. Feb. 9, 1990).

This Court's decision in *Baxter v. A.R. Baron & Co.* is particularly instructive.  In that case, this Court ruled that allegations that a broker earned sales commissions directly from the fraudulent sales of securities adequately pled motive:

---

[8]    Indeed, Goldstein's asset-based commissions earned from the Millennium accounts ceased shortly *after* MSDW enforced new policies and procedures designed to prevent deceptive market-timing practices throughout the firm.  Compl. ¶ 6, Attachment A.

[9]    *See also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, No. 05 Civ. 9016(SAS), 2007 WL 528703, at *4 (S.D.N.Y. Feb. 20 2007) (alleging that administrator's "fees were tied directly" to a fund's net asset value demonstrated scienter based on motive); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 346 (S.D.N.Y. 2004) (alleging that defendant had "concrete motive to generate fees through sham valuations" was sufficient to plead scienter); *Joffee v. Lehman Bros., Inc.*, No. 04 Civ.3507, 2005 WL 1492101, at *12 (S.D.N.Y. Jun. 23, 2005) (alleging that an investment bank's false and misleading statements were made for a client "in order to obtain additional investment banking fees" satisfied the scienter pleading requirement); *Anitora Travel, Inc. v. Lapian*, 677 F. Supp. 209, 216 (S.D.N.Y. 1988) (alleging defendant's fraud allowed "him to earn commission on sales he might otherwise not have made" satisfied scienter requirement in RICO case).

> [A]llegations that [the broker] realized sales commissions
> from the allegedly fraudulent sales of securities to the
> plaintiffs . . . . is a direct pecuniary motive tied to the
> plaintiffs' purchases of securities and provides a sufficient
> motive for fraud. . . . [The broker] stood to gain directly
> from each trade by the plaintiffs based on his direct alleged
> misrepresentations and omissions.

1996 WL 586338, at *3 (internal citation omitted).  In the same way, the complaint's

allegations that Goldstein earned commissions that were directly linked to his fraudulent

market-timing trades sufficiently creates a strong inference of scienter based on motive.[10]

### 2.    Goldstein Acted With An Intent To Deceive Or Recklessness

Allegations of conscious misbehavior or recklessness are sufficient if the conduct

is "highly unreasonable" and "represents an extreme departure from the standards of

ordinary care to the extent that the danger was either known to the defendant or so

obvious that the defendant must have been aware of it."  *Kalnit*, 264 F.3d at 142.

Recklessness can be established when the complaint's allegations demonstrate that: (i)

the defendant was aware of facts or had access to information contradicting his

statements and thus he knew or should have known he was misrepresenting or omitting

material facts, or (ii) the defendant failed to review or check information that he had a

---

[10]    Tellingly, Goldstein can only rely on irrelevant cases and then you go in and then go home and an which stand for the uncontroversial position – not present in this case – that allegations involving artificially inflated share prices and a generalized motive of corporate insiders to maintain or increase such prices do not provide a sufficient motive.  *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 170 (2d Cir. 2000) (remanding case to determine whether allegations of motive involving corporate officers and an inflated stock price were sufficient); *Novak*, 216 F.3d at 307-08 (ruling that allegations that corporate insiders were motivated to maintain company's high credit rating or stock price or prolong their employment did not meet scienter pleading requirements); *Shields*, 25 F.3d at 1130-31 (alleging that corporate executives were motivated to maintain artificially inflated price of stock – which they did not own – in order to "protect their executive positions and the compensation and prestige they enjoy thereby" did not adequately plead motive).  Unlike an executive insider who has a generalized association with the overall profitability of his company and its share price, Goldstein was a broker who personally gained and profited as a direct result of his fraudulent market-timing activity.  *See Baxter*, 1996 WL 586338, at *3 (highlighting that motive allegations that a broker earned fees directly from fraudulent trades were different from those cases which "held that a generalized interest in a high stock price by virtue of executive compensation tied to stock performance did not alone raise a sufficiently strong inference of scienter").

duty to monitor, or ignored obvious signs of fraud.  *Novak*, 216 F.3d at 308; *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 40 (2d Cir. 2000).

In this case, the complaint pleads specific facts from which a reasonable inference can be drawn that Goldstein acted with the requisite intent to deceive or defraud.  Indeed, the Commission's detailed allegations reveal a veritable cat and mouse game in which the mutual fund companies monitored activity in their funds for excessive trading, Goldstein attempted to keep his Clients' excessive trading from being detected, the mutual funds identified some of his Clients' excessive trading and attempted to enforce their trading restrictions, and Goldstein responded by using deceptive practices to continue executing market-timing trades for Haidar and Millennium in those same funds.

Specifically, the complaint alleges that Goldstein knew or was reckless in not knowing that mutual fund companies imposed restrictions on excessive trading to detect and prevent market timing.  Compl. ¶¶ 2, 3, 22-23.  Moreover, early on in his association with his Clients, Goldstein knew or was reckless in not knowing that they were engaged in trading practices that deceived mutual funds.  *Id.* ¶ 3.  Goldstein's role in the scheme was more than mechanically executing his Clients' orders; he also advised them on how to make deceptive market-timing trades**.**  *Id. ¶* 3.  Goldstein was aware that funds were attempting to enforce their trading restrictions against his Clients.  *Id.* ¶ 41, Attachment A.  By trading through multiple FA identification numbers, accounts, and variable annuity contracts, Goldstein intended to, and did, make it more difficult for the funds to detect and prevent his Clients' market-timing trading.  *Id.* ¶¶ 3, 28, 32-33, 37, 40, 43.

The Commission's detailed allegations about how Goldstein executed market-timing trades for his Clients support a strong inference that he knew that he was involved in fraudulent activities.  This inference is supported in a number of ways.

First, in less than twenty months, Goldstein placed more than 2,700 market-timing trades for his Clients, with at least 50 mutual fund complexes, resulting in a total trading volume in excess of $3.2 billion.  *Id.* ¶30.

Second, Goldstein placed these trades using eight different FA identification numbers.  *Id.* ¶ 36.  Although joint FA identification numbers were sometimes used at MSDW to allocate commissions for a shared customer, neither Haidar or Millenium was a shared customer.  *Id.* ¶¶ 36, 39.  To obtain these additional numbers, he and his partner entered into joint production agreements with two other FAs, including a retiring FA.  *Id.* ¶ 39.  These FAs had little or no role in establishing or servicing the Clients' accounts and were brought in only after he began trading for the Clients and only after he began receiving block and bar notices from mutual funds.  *Id.* ¶¶ 30, 32-33, 36-39, 42, Attachment A.  Some of these joint FA identification numbers were coded in such a way as to make it appear that the trades originated from a different MSDW office.  *Id.* ¶ 39.

Third, Goldstein placed these trades through more than seventy accounts.  *Id.* ¶ 50.  The majority of the accounts bore the name of a different limited liability company that had no apparent relationship with Haidar or Millennium.  *Id.*  These accounts were not used to segregate assets or to pursue different investment strategies.  *Id.* ¶¶ 34-35.  The timing and manner in which these accounts were opened suggest an effort to circumvent the mutual funds' trading restrictions.  *Id.* ¶¶ 32-35, 42-43, Attachment A.

Fourth, during the relevant time period, Goldstein placed additional market-timing trades through numerous variable annuity contracts. *Id.* ¶¶ 40-41. These were sham transactions designed to conceal his Clients' market-timing trading. *Id.* ¶¶ 26-29, 41. His Clients did not need or want life insurance, nor were they interested in tax-deferred investing or retirement planning benefits associated with these investments. *Id.* ¶ 41. The additional fees associated with these investments also made it a more expensive and unnecessarily complicated way for them to invest in funds. *Id.* ¶¶ 26, 41.

Finally, in less than fifteen months, Goldstein and his partners collectively received approximately 131 block and bar notices from mutual fund companies, asking them to stop or limit their excessive trading for Haidar and Millenium. *Id.* ¶ 42. Despite these repeated requests, he continued to execute market-timing trades in the same funds through the Clients' other accounts and with different FA identification numbers. *Id.* As a result of this subterfuge, fund companies were fooled into processing additional transactions that they were trying to stop from him and his Clients. *Id.*

Goldstein argues that the allegations in the complaint do not prove that the purpose of using multiple FA identification numbers, accounts, and variable annuity contracts was to make his Clients' market-timing activities difficult to detect and that there are other legitimate and plausible purposes for such practices. Goldstein Br. at 2, 16. However, at this stage of the litigation, where the Court is required to draw all reasonable inferences in favor of the Commission, the Commission need not prove its allegations to the exclusion of all other possibilities. *See Druffner,* 353 F. Supp. 2d at 150. It need only set forth specific facts that give rise to a reasonable and strong

inference of Goldstein's fraudulent behavior—which it has done. That is all that the law requires. Accordingly, Goldstein's motion to dismiss should be denied.

### C.     The Complaint Also Adequately Alleges A Non-Scienter Claim

The Commission alleges in the First Claim that Goldstein violated Section 17(a) of the Securities Act. Sections 17(a)(2) and (3) do not require a showing of scienter. To state a claim pursuant to Section 17(a)(2), the Commission must plead facts sufficient to show, at a minimum, that Goldstein made a material misrepresentation or omission that he should have known was false or misleading, *i.e.*, that he was negligent. Similarly, to state a claim pursuant to Section 17(a)(3), the Commission must plead facts sufficient to show, at a minimum, that Goldstein negligently engaged in a transaction, practice, or course of business which operated as a fraud or deceit. For the reasons outlined above, in section III.B, the complaint adequately alleges facts sufficient to establish Goldstein's negligent conduct. Accordingly, Goldstein's arguments regarding the failure of the complaint to adequately allege scienter, do not reach this non-scienter claim.

### CONCLUSION

For the foregoing reasons, the motion to dismiss filed by Goldstein should be denied.

Dated:  April 10, 2008                              Respectfully submitted,

                                                    /s/  Jordan A. Thomas_____
                                                    Jordan A. Thomas (JT-2886)
Local Counsel:                                      Paul E. Kim
Robert B. Blackburn (RB 1545)
                                                    Securities and Exchange Commission
Of Counsel:                                         100 F. Street, N.E.
Christopher R. Conte                                Washington, DC 20549-4030
Mark Kreitman                                       Tel:  (202) 551-4475
Robert B. Hanson                                    Fax:  (202) 772-9245