# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____
                                           :

**SECURITIES AND EXCHANGE COMMISSION,** :

                                           :

                 **Plaintiff,**          :

                                           :    **Civil Action No.**

             **v.**                   :

                                           :    **07 CV 11275 (JGK/JCF)**

**DARRYL A. GOLDSTEIN and** :

**CHRISTOPHER L. O'DONNELL,** :

                                           :

                **Defendants.**     :

_____

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
## <u>OPPOSITION TO DEFENDANT O'DONNELL'S MOTION TO DISMISS</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................ iii

PRELIMINARY STATEMENT ...................................................... 1

ARGUMENT ...................................................................... 2

I.    The Complaint Properly States A Claim Upon Which Relief Can Be
      Granted .................................................................. 2

      A.    The Standard For Deciding A Motion To Dismiss ...................... 2

      B.    O'Donnell's Argument Ignores Rule 12(b)(6) Standards .............. 3

      C.    The Complaint Adequately Alleges Violations Of The Antifraud
            Provisions Of The Federal Securities Laws ......................... 4

            1.  O'Donnell Engaged In A Fraudulent Scheme ...................... 5

            2.  O'Donnell Made Material Misrepresentations .................... 7

            3.  O'Donnell Made Material Omissions ............................. 9

II.   The Complaint Alleges A Claim Of Fraud With Particularity ............. 13

      A.  The Pleading Requirements Under Rule 9(b) ........................... 13

      B.  The Complaint Alleges Sufficient Facts To Support Its Claims ....... 13

            1.  Scheme to Defraud Allegations ................................ 14

            2.  Material Misrepresentation And Omission Allegations .......... 15

III.  The Complaint Alleges Facts Supporting A Strong Inference Of
      Scienter ................................................................ 16

      A.  The Standard For Pleading Scienter ................................. 16

      B.  The Complaint Adequately Alleges Scienter .......................... 18

            1.  O'Donnell Had A Motive And Opportunity To Commit Fraud ....... 18

            2.  O'Donnell Acted With An Intent To Deceive Or Recklessness .... 21

C.  The Complaint Also Adequately Alleges a Non-Scienter Claim....................25

CONCLUSION..............................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)..............................14

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ...................................16

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) ...........................17

*In re Alstom SA*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................5

*Anitora Travel, Inc. v. Lapian*, 677 F. Supp. 209 (S.D.N.Y. 1988)...................................20

*Baxter v. A.R. Baron & Co.*, No. 94 Civ. 3913, 1996 WL 586338
    (S.D.N.Y. Oct. 11, 1996) .......................................................................................19, 20

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ......................................................3

*In re Blech Sec. Litig.*, 961 F. Supp. 569 (S.D.N.Y. 1997)................................14

*Caiola v. Citibank, N.A., New York*, 295 F.3d 312 (2d Cir. 2002) ....................................11

*In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36 (2d Cir. 2000).......................22, 23, 24

*Chris-Craft Indus. Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973) .................10

*In re Credit Suisse First Boston Corp. Sec. Litig.*, No. 97 CIV. 4760, 1998 WL
    734365 (S.D.N.Y. Oct. 20, 1998) ................................................................................11

*Dreieck Finanz AG v. Sun*, No. 89 CIV. 4347, 1990 WL 11537
    (S.D.N.Y. Feb. 9, 1990) .................................................................................................21

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)........................................................5, 16

*Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168
    (2d Cir. 2004).....................................................................................................................2

*Ganino v. Citizens Utilities Co.*, 228 F.3d 154 (2d Cir. 2000) ..........................................21

*In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004)................20

*Gruntal & Co., Inc. v. San Diego Bancorp*, 901 F. Supp. 607 (S.D.N.Y. 1995)...............20

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993)...........................14

*In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) .............10, 12

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ....................................................................3, 4

*Joffee v. Lehman Brothers, Inc.*, No. 04 CIV.3507, 2005 WL 1492101
    (S.D.N.Y. Jun. 23, 2005) .......................................................................................20

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) .....................................................18, 19, 21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v Dabit*, 126 S. Ct. 1503 (2006) ................18

*In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845 (D. Md. 2005) ...................................7

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ...........................................2

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) .....................................................17, 19, 22

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990) ......................................................13

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
    No. 05 Civ. 9016(SAS), 2007 WL 528703 (S.D.N.Y. Feb. 20 2007) ........................20

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) .................................................15, 16, 21

*Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979) ......................................................16

*SEC v. Alexander*, 160 F. Supp. 2d 642 (S.D.N.Y. 2001) .................................................13

*SEC v. Boling*, No. 06 CIV. A. 1329, 2007 WL 2059744 (D.D.C. Jul. 13, 2007) ............18

*SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477 (S.D.N.Y. 2007)................5, 17, 18

*SEC v. Dorozhko*, No. 07 CIV. 9606, 2008 WL 126612 (S.D.N.Y. Jan. 8, 2008) ............18

*SEC v. Druffner*, 353 F. Supp. 2d 141 (D. Mass. 2005) ........................................... passim

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) ..............................................5

*SEC v. Gad*, No. 07 CIV 8385, 2007 WL 4437230 (S.D.N.Y. Dec. 17, 2007)................18

*SEC v. Gann*, No. 305CV0063L, 2006 WL 616005 (N.D. Tex. Mar. 13, 2006) ......6, 7, 13

*SEC v. Gold*, No. 05-CV-4713, 2006 WL 3462103 (E.D.N.Y. Aug. 18, 2006)................17

*SEC v. Goldsworthy*, No. 06 CIV. A. 10012, 2007 WL 4730345
(D. Mass. Dec. 4, 2007) ..................................................................................18

*SEC v. JB Oxford Holdings, Inc.*, No. CV-04-070084, 2004 U.S. Dist. LEXIS
29494 (C.D. Ca. Nov. 10, 2004) ...............................................................7, 8, 9

*SEC v. Lyon*, 529 F. Supp. 2d 444 (S.D.N.Y. 2008).........................................18

*SEC v. Power*, 525 F. Supp. 2d 415 (S.D.N.Y. 2007) ......................................18

*SEC v. Prater*, 296 F. Supp. 2d 210 (D. Conn. 2003)......................................17

*SEC v. U.S. Envtl., Inc.*, 82 F. Supp. 2d 237 (S.D.N.Y. 2000) ............................13, 14, 15

*SEC v. Zandford*, 535 U.S. 813 (2002) ................................................................6

*Santa Fe Indus., Inc. v. Green*, 430 U.S. 462 (1977)...........................................6

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) ....................13, 19

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ......................13

*Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.*,
404 U.S. 6 (1971)......................................................................................6, 7

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)..............................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ........................17, 18

*In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993) ...................10, 11

*In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327 (S.D.N.Y. 2007) ...............13

*U.S. v. Russo*, 74 F.3d 1383 (2d Cir. 1996) ........................................................6

*Wedbush Morgan Sec., Inc. v. Robert W. Baird & Co.*, 320 F. Supp. 2d 123
(S.D.N.Y. 2004).............................................................................................20

## STATUTES

## SECURITIES EXCHANGE ACT OF 1934

Section 21, [15 U.S.C. §§ 78u-4(b)(1)] ............................................................18

Section 21D(b)(1), [15 U.S.C. §§ 78u(a)(1)]....................................................18

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 8(f)......................................................................................................................2

Rule 12(b)(6)..............................................................................................................2

The Securities and Exchange Commission ("Commission") hereby opposes the motion to dismiss filed by Defendant Christopher L. O'Donnell ("O'Donnell"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

From January 2002 until July 2003, O'Donnell, a top financial advisor ("FA") at Morgan Stanley DW, Inc. ("MSDW"), defrauded at least 35 mutual fund companies and their shareholders by engaging in deceptive acts designed to circumvent those funds' restrictions on market timing. Specifically, in an effort to conceal over 1,300 market-timing trades with a total trading volume exceeding $1.5 billion, O'Donnell repeatedly and systematically employed a variety of deceptive practices, including, but not limited to, opening and trading in approximately fifty brokerage accounts, purchasing and trading through ten variable annuity contracts, and using three different FA identification numbers—for only one customer, Millennium Partners L.P. ("Millennium").

Contrary to O'Donnell's motion to dismiss, the complaint clearly establishes that his deceptive market-timing trading violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. First, with its allegations of O'Donnell's participation in a fraudulent scheme to deceive mutual funds, and his material misrepresentations and omissions to those funds, the Commission has properly stated a claim upon which relief can be granted, pursuant to Rule 12(b)(6). Second, the Commission has also plead its fraud claims with particularity, pursuant to Rule 9(b). The Commission's claims are supported by detailed factual allegations, comprehensive charts, and specific examples that far exceed the relevant pleading requirements. Third, the complaint also adequately

alleges facts supporting a strong inference of O'Donnell's scienter.  Specifically, the complaint alleges that O'Donnell had the motive and opportunity to commit the fraud.  In fact, as a result of his deceptive market-timing practices, O'Donnell generated $390,677 in commissions or asset-based fees for himself—in less than two years.  Furthermore, the complaint often alleges actual knowledge on the part of O'Donnell and even when the Commission relies on circumstantial evidence, the inference of his culpable knowledge is strong.  Accordingly, the Court should deny O'Donnell's motion to dismiss.

## ARGUMENT

## I.    The Complaint Properly States A Claim Upon Which Relief Can Be Granted

### A.    The Standard For Deciding A Motion To Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true the allegations in the complaint and all reasonable inferences must be drawn in the Commission's favor.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).  The Court's function on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 176 (2d Cir. 2004).  Ultimately, the complaint need only:  (i) include a short and plain statement of the claim showing that the Commission is entitled to relief; and (ii) give O'Donnell fair notice of what the Commission's claim is and the grounds upon which it rests.  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002).

While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," Fed.R.Civ.P. 12(b)(6), they also require all pleadings to be "construed so as to do substantial justice," Fed.R.Civ.P. 8(f).  Given

the Federal Rules' simplified standard for pleading, a Rule 12(b)(6) motion must be

denied unless the Commission's claim is not "plausible on its face;" that is, unless the

Commission's allegations, analyzed collectively, do not "raise a right to relief above the

speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007);

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

### B.    O'Donnell's Argument Ignores Rule 12(b)(6) Standards

As a preliminary matter, it is important to note that O'Donnell's motion

frequently strays beyond the boundaries of Rule 12(b)(6) and becomes more akin to an

argument for summary judgment pursuant to Rule 56. Where O'Donnell ignores the

limitations of Rule 12(b)(6), as identified below, his contentions should be disregarded.

First, O'Donnell improperly challenges the facts alleged in the complaint. He

asserts that numerous alleged facts and related inferences are wrong with regard to:  what

inference should be drawn from terms in joint production agreements, O'Donnell Br. at

6; whether certain mutual funds banned him from trading in their funds, *id.* at 8, 17[1];

whether he used alternate FA identification numbers because he was blocked from using

his own, *id.* at 8-9[2]; what inference should be drawn from the allegation that Millennium

accounts were not opened to segregate assets or to pursue different investment strategies,

*id.* at 10; what inference should be drawn from the trading advice given to Millennium by

---

[1]    O'Donnell attempts to manufacture inconsistencies between the allegations in paragraph 60 and Attachment B of the complaint. For example, O'Donnell challenges the allegation that he was banned from trading in AIM funds on October 9, 2002, Compl. ¶ 60(a), because the FA identification numbers referenced in Attachment B were not his. O'Donnell Br. at 8. However, what O'Donnell fails to mention is that the bar notice in question actually references the FA identification number for his entire branch (723-WRCH) and was sent by E-mail directly to him. *Id.*, Ex. 1. Rules 12(b)(6) and 9(b) only require that the complaint allege facts, not describe the evidence that will be used to prove the facts alleged at trial. It is for this reason that these types of factual challenges must be disregarded for purposes of his motion to dismiss.
[2]    O'Donnell argues that there is no evidence that he used additional FA identification numbers after being banned from trading by a mutual fund. O'Donnell Br. at 8. Beyond being factually inaccurate, this argument ignores his use of multiple FA identification numbers to conceal Millennium's excessive trading activity in violation of mutual funds prospectuses—*before* the mutual funds issued any block or bar notices.

his assistant, *id.* at 11; and what inference should be made about AIM's trading policies from one of its block notices, *id.* at 16.  These and other similar factual challenges should not be considered for purposes of O'Donnell's motion to dismiss.

Second, O'Donnell improperly argues "facts" relating to matters not alleged in the complaint.  He makes the following unsupported factual claims:  at all relevant times, Millennium was a well-respected, well-known hedge fund manager, O'Donnell Br. at 1 n.2; prior to September 2003, market timing was permitted to a significant degree in mutual funds, *id.* at 1; his daily activities were carefully supervised and scrutinized, *id.* at 1; as a retail broker his responsibility was to process his clients' orders promptly and in compliance with MSDW's policies and procedures which was consistent with what he did, *id.* at 3, 20; the accounts were controlled by Millennium, *id.* at 9; Millennium determined what accounts to use, *id. at 10;* and his market-timing trading activity was completely transparent and required the facilitation of numerous MSDW departments and personnel to be effectuated, *id.* at 20.  These and other unsupported factual assertions should not be considered for purposes of O'Donnell's motion to dismiss.

Third, O'Donnell argues issues that can only be appropriately addressed, following discovery, on summary judgment or at trial.  For example, O'Donnell asks the Court to analyze certain aspects of his market-timing trading, in a handful of mutual funds, at select times, to determine whether an overall negative inference is appropriate.  O'Donnell Br. at 9.  This sort of complex analysis is beyond the scope of Rule 12(b)(6).

## C.    The Complaint Adequately Alleges Violations Of The Antifraud Provisions Of The Federal Securities Laws

The Commission alleges that O'Donnell violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder ("Antifraud

Provisions"). The required elements of an action pursuant to Section 17(a) and Section 10(b) are substantially the same. *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996); *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 490 (S.D.N.Y. 2007) (a complaint that is sufficient to state a claim pursuant to Section 10(b) and Rule 10b-5 is also sufficient to state a claim pursuant to Section 17(a)(1)). To establish a violation of the Antifraud Provisions, the Commission must show that: 1) O'Donnell engaged in fraudulent conduct; 2) in connection with the purchase or sale of securities; 3) through the means or instrumentalities of transportation or communication in interstate commerce or by use of the mails; and 4) with the requisite scienter. *Id.*

O'Donnell argues that market-timing is not a cognizable theory of fraud or deception. O'Donnell Br. at 5. In the alternative, he denies engaging in fraudulent conduct. *Id.* at 4. O'Donnell's motion to dismiss and claims that the complaint must be dismissed because it fails to allege material misrepresentations or omissions. *Id.* at 4. However, as explained below, his motion should be denied because it completely disregards the Commission's fraudulent scheme allegation, ignores the facts alleged in the complaint, and is inconsistent with established precedent.

### 1. O'Donnell Engaged In A Fraudulent Scheme

The complaint alleges that O'Donnell engaged in a scheme to defraud mutual fund companies, in violation of Section 17(a)(1) and (3) of the Securities Act and Rule 10b-5(a) and (c) pursuant to the Exchange Act.[3] To plead a scheme to defraud, the Commission must allege that he engaged in a manipulative device or contrivance. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199 nn.20-21 (1976). This cause of action was

---

[3]     "Rule 10b-5(a) or (c) does not require an allegation that the defendant made a statement, as liability is premised on a course of deceptive conduct undertaken by the defendant, rather than on misrepresentations or omissions." *In re Alstom SA*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005).

intended to cover "the full range of ingenious devices that might be used to manipulate."
*Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977).  The Supreme Court has
emphasized that this cause of action "should be construed not technically and
restrictively, but flexibly to effectuate its remedial purposes."  *SEC v. Zandford*, 535 U.S.
813, 819 (2002); *see also U.S. v. Russo,* 74 F.3d 1383, 1390 (2d Cir. 1996).

O'Donnell argues that the Commission's claims relating to his market-timing
trading should be dismissed because the deceptive practices alleged in the complaint were
"entirely lawful and commonplace."  O'Donnell Br. at 5.  Specifically, he argues that
there are legitimate reasons for using more than one FA identification number, opening
multiple accounts, and purchasing variable annuity contracts.  *Id.* at 5-12.  In this regard,
O'Donnell seems to suggest that because market timing is not necessarily illegal, as a
matter of law, there can be no violation of the Antifraud Provisions.  This argument is
without merit.  Just as trading securities is not inherently illegal, individuals can commit
fraud in the purchase and sale of securities by engaging in deceptive practices, such as,
insider trading and market manipulation.  Accordingly, "the relevant inquiry is whether,
while executing market-timing trades, the Defendant[] committed fraud by engaging in
deceptive practices."  *SEC v. Gann*, No. 305CV0063L, 2006 WL 616005, at *7 (N.D.
Tex. Mar. 13, 2006); *see also Superintendent of Ins. of State of N.Y. v. Bankers Life &
Cas. Co.*, 404 U.S. 6, 12 (1971) ("Since practices constantly vary and where practices
legitimate for some purposes may be turned to illegitimate and fraudulent means, broad
discretionary powers in the regulatory agency have been found practically essential.").

In this case, the complaint alleges that O'Donnell knew or was reckless in not
knowing that mutual fund companies imposed restrictions on excessive trading and

monitored trading activity in their funds to detect and prevent market timing.  Compl. ¶ 3.

Moreover, early on in his association with Millennium, O'Donnell knew or was reckless

in not knowing that they were engaged in trading practices that deceived mutual funds.

*Id.*  Indeed, O'Donnell's role in the fraudulent scheme was more than mechanically

executing orders; he also advised Millennium how to conceal its trading activity and

circumvent mutual funds' restrictions on market timing.  *Id.* ¶¶ 1, 3.  In this way, by

trading through fifty accounts, ten variable annuity contracts, and three FA identification

numbers, he intended to, and did, make it more difficult for mutual funds to detect and

prevent Millennium's deceptive market-timing trading.  *Id.* ¶¶ 3, 46, 48-50, 52-54, 57-58.

Accepting these allegations to be true and in the light most favorable to the

Commission, the timing, manner, and use of these trading practices by O'Donnell

constitute manipulative devices prohibited by the Antifraud Provisions.  Courts have

denied motions to dismiss where similar market-timing schemes have been alleged.  *See,*

*e.g., Gann*, 2006 WL 616005, at *7 (use of multiple accounts, FA identification numbers,

and smaller trades to evade trading restrictions); *SEC v. Druffner*, 353 F. Supp. 2d 141,

146 (D. Mass. 2005) (use of multiple FA identification numbers and accounts with

misleading names to evade trading restrictions); *In re Mutual Funds Inv. Litig.,* 384 F.

Supp. 2d 845, 856 (D. Md. 2005); *SEC v. JB Oxford Holdings, Inc.*, No. CV-04-070084,

2004 U.S. Dist. LEXIS 29494, at *17-18 (C.D. Ca. Nov. 10, 2004) (use of multiple

accounts, FA identification numbers, and office codes to evade trading restrictions).

## 2.    O'Donnell Made Material Misrepresentations

The complaint also alleges that O'Donnell made material misrepresentations to

mutual fund companies—*i.e.,* concerning his use of multiple accounts and FA

identification numbers—when executing trades for Millennium, to conceal its excessive trading activity and to circumvent mutual funds' restrictions on market timing, in violation of Section 17(a)(2) of the Securities Act and Rule 10b-5(b) of the Exchange Act.  O'Donnell argues that the complaint should be dismissed because it is "devoid of any allegations that O'Donnell made a material misrepresentation."  O'Donnell Br. at 4.  However, this contention is wholly inconsistent with the facts alleged in the complaint.

The complaint alleges that O'Donnell made false and misleading statements to mutual fund companies in the account opening process to conceal Millennium's trading activity and circumvent mutual funds' market-timing restrictions.  Compl. ¶¶ 1, 3, 4.  Over the course of a year, O'Donnell opened approximately fifty accounts for Millennium that bore the names of limited liability companies formed to facilitate Millennium's market-timing trading.  *Id.* ¶ 48.  The use of these companies and their names were misleading because they had no apparent relationship to Millennium, thereby preventing mutual funds from easily associating Millennium with their excessive trading.  *Id.*  These accounts allowed O'Donnell to invest a larger amount of Millennium's money in a target mutual fund without triggering the fund's surveillance threshold.  *Id.*  Moreover, when their market-timing trades were detected by a fund, O'Donnell would continue to execute trades in the same fund by shifting money to Millennium's other accounts, despite the fund's attempts to block their trading.  *Id.*  The number, timing and manner in which these accounts were used demonstrate that O'Donnell knowingly or recklessly made these false and misleading statements.  *Id.* ¶ 49-51, 60, Attachment B.

Similarly, the complaint alleges that O'Donnell made false and misleading statements to mutual funds by opening accounts and executing trades using multiple FA

identification numbers to further conceal Millennium's trading and circumvent funds' market-timing restrictions.  *Id.* ¶¶ 25, 52.  By using different FA identification numbers, he created the misleading impression that the trades were being placed by different brokers, thereby making it harder for funds to detect and prevent him from executing Millennium's market-timing trades.  *Id.* ¶ 54.  The number of FA identification numbers used, the nature of the related joint production agreements, the timing in which these agreements were entered into, and the non-existent role the other brokers associated with these agreements had in establishing or servicing the Millennium's accounts demonstrate that he knowingly or recklessly made these false and misleading statements.  *Id.* ¶¶ 46, 48, 52-56, Attachment B.

Accepting these allegations to be true and viewing them in the light most favorable to the Commission, the complaint alleges ample facts to support the claim that O'Donnell made misrepresentations to countless mutual funds to evade their trading restrictions.  Furthermore, it is reasonable to infer that the actual identity of the broker executing excessive market-timing trades and the client for whom the trades were placed were material facts because mutual fund prospectuses imposed restrictions on market timing or excessive trading, and mutual funds monitored trading activity in their funds and attempted to enforce their trading restrictions.  *Id.* ¶¶ 2, 4, 22-23, 59.

### 3.      O'Donnell Made Material Omissions

The complaint also alleges that O'Donnell made material omissions—*i.e.,* concerning his use of multiple accounts and FA identification numbers—when executing trades for Millennium to conceal its excessive trading and to circumvent mutual funds' restrictions on market timing.  Section 17(a)(2) of the Securities Act and Rule 10b-5(b) of

the Exchange Act provide that, when making statements, a speaker must not omit "to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading."  An omission is actionable under federal securities laws when the defendant is subject to a duty to disclose the omitted facts.  *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).  He asserts that the complaint lacks any allegations that he "failed to disclose material information that he had a duty disclose."  O'Donnell Br. at 4.  This erroneous view reflects a misunderstanding of well-established law.

"The initial inquiry in each case is what duty of disclosure the law should impose upon the person being sued."  *In re Initial Pub. Offering Sec. Litig.,* 241 F. Supp. 2d 281, 381 (S.D.N.Y. 2003) (*quoting Chris-Craft Indus. Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 363 (2d Cir. 1973)).  As a preliminary matter, where a defendant has engaged in conduct that amounts to a scheme to defraud pursuant to Rule 10b-5(a) and (c), that fraudulent conduct creates an independent duty to disclose.  *In re IPO,* 241 F. Supp. 2d at 381-82 (finding independent duty to disclose in the market manipulation context).  This "duty to disclose falls on *all* parties aware of the manipulation, or who take advantage of it" because "participants in the securities markets are entitled to presume that *all* of the actors are behaving legally; silence that conceals illegal activity is intrinsically misleading and (presuming the illegality is also material) is *always* violative of Rule 10b-5(b)."  *Id.* at 382 (emphasis added).

Even in cases where an independent duty is not readily apparent, the securities laws give rise to a duty to disclose any information necessary to make an individual's voluntary statements not misleading.  *Druffner,* 353 F. Supp. 2d at 148 (citing Rule 10b-

10

5(b) in rejecting market-timing brokers' arguments that they had no duty to disclose to mutual funds that "they were using multiple account numbers and FA numbers"). Accordingly, if a defendant chooses to convey relevant and material information, he is required to do so completely and truthfully. *Caiola v. Citibank, N.A.*, New York, 295 F.3d 312, 331 (2d Cir. 2002) (holding that "the lack of an independent duty is not . . . a defense to Rule 10b-5 liability because upon choosing to speak, one must speak truthfully about material issues"); *In re Credit Suisse First Boston Corp. Sec. Litig.*, No. 97 CIV. 4760, 1998 WL 734365, at *6 (S.D.N.Y. Oct. 20, 1998) (Koeltl, J.) ("Rule 10b-5 creates a statutory duty to speak the full truth when a defendant undertakes to say anything."). A duty to disclose also arises when disclosure is necessary to make prior statements not misleading or to update statements that have become misleading due to intervening events. *In re Time Warner*, 9 F.3d at 267-68.

In this case, it is reasonable to infer from the Commission's allegations that information concerning the true identities of a broker placing market-timing trades and the client for whom the trades were placed was material because mutual funds imposed restrictions on market timing and excessive trading, monitored such trading activity in their funds, and attempted to enforce those trading restrictions. Compl. ¶¶ 2, 4, 22-23, 59. Accordingly, by executing Millennium's market-timing trades in mutual funds, O'Donnell had a duty to disclose to those funds that he was using almost fifty accounts with different (and unrelated) names and three FA identification numbers—for just one client. *Id.* ¶¶ 46, 48, 53, 55. This duty arose in a number of ways.

First, as discussed in section I.C.1, O'Donnell made material misrepresentations and omissions to conceal and effectuate a scheme to defraud various mutual funds and

their shareholders.  As a result, O'Donnell had an independent duty to disclose his use of multiple FA identification numbers and accounts.  *See In re IPO*, 241 F.Supp.2d at 381.

Second, O'Donnell voluntarily assumed a duty to disclose these facts when he submitted information about Millennium's transactions to the mutual fund companies. O'Donnell was responsible for opening accounts and executing trades through these accounts.  Compl. ¶¶ 3, 4, 46, 48, 52.  In executing these transactions, he assumed a duty not to omit anything which would make the information submitted to the mutual funds materially misleading.  *See Druffner,* 353 F. Supp. 2d at 148.

Third, once O'Donnell started to submit Millennium's trade information to the mutual funds, he had a continuing duty to disclose all information necessary to make his initial representations not misleading.  The complaint alleges that, early on, O'Donnell knew or was reckless in not knowing that the hedge fund engaged in trading practices intended to deceive mutual funds.  *Id.* ¶ 3.  Accordingly, even if he was initially unaware of the misleading and deceptive nature of the market-timing trades, once he became aware of it he had a duty to disclose it.  That disclosure obligation grew over time, especially considering that O'Donnell received over 94 block notices from mutual funds attempting to prevent Millennium's market-timing trading.  *Id.* ¶59.

Therefore, the complaint properly alleges that O'Donnell failed to disclose material facts necessary to make the transactional information that he provided to mutual funds, in connection with Millennium's market-timing trades, not misleading.

## II.    The Complaint Alleges A Claim Of Fraud With Particularity

### A.    The Pleading Requirements Under Rule 9(b)

Because the Commission's claims against O'Donnell involve fraud, the allegations in the complaint must satisfy Rule 9(b).  Rule 9(b) provides:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The purpose of this rule is to provide a defendant with fair notice of a plaintiff's claim.  *E.g., Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *SEC v. Alexander*, 160 F.Supp.2d 642, 649 (S.D.N.Y. 2001).  However, the courts have acknowledged Rule 9(b)'s limited breadth, noting that it "must be read together with Rule 8(a), which requires only a short plain statement of the claim for relief."  *SEC v. U.S. Envtl., Inc.*, 82 F. Supp. 2d 237, 240 (S.D.N.Y. 2000) (*quoting Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990)).  Ultimately, Rule 9(b) does not require plaintiffs to set out in detail each and every fact upon which they base their claim or plead the evidence that they will use to prove the facts alleged at trial.  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001); *In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327, 335 (S.D.N.Y. 2007).

### B.    The Complaint Alleges Sufficient Facts To Support Its Claims

Contrary to O'Donnell's assertions that the complaint's allegations are vague and conclusory (O'Donnell Br. at 3, 6, 14-15, 21), each of the claims is supported by detailed factual allegations (Compl. ¶¶ 1-29, 46-62), comprehensive charts (*id.* ¶¶ 48, 55; Attachment B), and specific examples (*id.* ¶ 60) that far exceed the relevant pleading requirements.  *See, e.g., Gann*, 2006 WL 616005, at *5; *Druffner*, 353 F. Supp. 2d at 148.

### 1.    <u>Scheme To Defraud Allegations</u>

In cases arising from a fraudulent scheme, a complaint must allege, "to the extent possible, what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market." *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007); *see also In re Blech Sec. Litig.*, 961 F. Supp. 569, 580 (S.D.N.Y. 1997). Because the details of a fraudulent scheme may only be known by the defendants, courts in this circuit apply a relaxed pleading standard. *See, e.g., IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993); *U.S. Envtl., Inc.*, 82 F. Supp. 2d at 240 (stating that "slavish satisfaction of these judicially fashioned elements would make a plaintiffs task impossible in many cases" not involving misrepresentations). Accordingly, it is not necessary to plead every manipulative stock trade to satisfy Rule 9(b). The Commission need only plead detailed descriptions of a few sample trades supplemented by broad allegations of the conduct claimed to be manipulative. *U.S. Envtl.*, 82 F. Supp. 2d at 240.

In this case, as discussed in section I.C.1, the complaint adequately alleges facts with particularity that establish a scheme to defraud, including: what market timing is (Compl. ¶¶ 2, 17-19); the harm caused by market timing (*id.* ¶¶ 2, 20-21); the trading restrictions imposed by mutual funds (*id.* ¶¶ 2, 22); their efforts to monitor trading activity within their funds (*id.* ¶¶ 2, 23); their efforts to enforce these trading restrictions (*id.* ¶¶ 2, 23); his efforts to avoid detection while executing trades that violated trading restrictions found in mutual funds' prospectuses (*id.* ¶¶ 1, 3, 4, 6, 48, 52, 57, 60); the client for which he executed the trades (*id.* ¶¶ 12, 14, 46); a list of the mutual fund complexes he executed trades in, along with a description of the trading activity (*id.* ¶

55); a list and a brief description of the block and bar notices issued by funds to enforce

their trading restrictions (*id.* ¶ 59, Attachment B); his efforts to circumvent the notices

issued by mutual funds (*id.* ¶¶ 48, 54, 59-60, Attachment B); a list and detailed

description of his trading activity following the issuance of each notice (*id.* Attachment

B); a list and a brief description of the accounts he opened and executed market-timing

trades through (*id.* ¶ 48); how opening and trading in multiple brokerage accounts

deceived mutual funds (*id.* ¶¶ 48-51); how trading using different FA identification

numbers deceived funds (*id.* ¶¶ 52-56); how trading through variable annuity contracts

deceived funds (*id.* ¶¶ 26-29, 57-58); what motivated him to engage in the fraudulent

conduct (*id.* ¶¶ 1, 46, 62); and when the deceptive acts occurred (*id.* ¶¶ 46, 48, 50, 53, 59-

60, Attachment B).  These allegations far exceed the Rule 9(b) pleading requirements.

### 2.    Material Misrepresentation And Omission Allegations

In cases where a claim rests on material misrepresentations or omissions, a

complaint must allege:  what statements or omissions were made, which defendant made

them, where and when the statements or omissions were made, and why the statements or

omissions were fraudulent.  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

In this case, as discussed in sections I.C.2 and 3, the complaint adequately alleges

facts with particularity that establish material misrepresentations and omissions,

including:  what misrepresentations or omissions were made (Compl. ¶ 4); O'Donnell's

role in making them (*id.* ¶¶ 3-4, 12, 14); how they generally deceived mutual funds (*id.*

¶¶ 3-4, 6); the client for which they were made (*id.* ¶¶ 12, 14, 46); a list of the mutual

funds that O'Donnell made them to, along with a description of the related trading

activity (*id.* ¶ 55); a list and brief description of the accounts O'Donnell made them about

(*id.* ¶ 48); how opening and trading in multiple brokerage accounts misled mutual funds (*id.* ¶¶ 48-51); how trading using different FA identification numbers misled mutual funds (*id.* ¶¶ 52-56 ); what motivated O'Donnell to make them (*id.* ¶¶ 1, 46, 62); and key dates associated with the misrepresentations or omissions (*id.* ¶¶ 46, 48, 50, 53, 59-60, Attachment B).  These allegations far exceed the Rule 9(b) pleading requirements.

**III.    The Complaint Alleges Facts Supporting A Strong Inference Of Scienter**

**A.    The Standard For Pleading Scienter**

Rule 9(b) does not by its terms require particularity in pleading scienter.  "Malice, intent, knowledge, and other condition of mind may be averred generally."  This is the standard that applies in Commission enforcement actions.

In 1979, to address concerns about groundless *private* securities fraud actions, the Second Circuit developed a heightened pleading requirement that a private complaint "supply a factual basis" that "give[s] rise to a strong inference that the defendants" had the required state of mind.  *See Ross v. A.H. Robins Co.*, 607 F.2d 545, 557, 558 (2d Cir. 1979).  That state of mind is scienter, "a mental state embracing an intent to deceive, manipulate or defraud."  *Ernst & Ernst*, 425 U.S. at 193.  Under the Second Circuit's "strong inference" standard, the principal inquiry at the motion to dismiss stage is whether all of the facts alleged, taken collectively, give rise to "a strong inference of fraudulent intent," not whether any individualized allegation, analyzed in isolation, meets the standard.  *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).  The requisite strong inference of fraudulent intent can be established by "alleging facts (1) showing that the defendant had both a motive and opportunity to commit the fraud or (2)

16

constituting strong circumstantial evidence of conscious misbehavior of recklessness."
*Collins & Aikman Corp.*, 524 F. Supp. 2d at 487.

In the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress enacted a strict state of mind pleading standard for private securities actions. The PSLRA requires that a private plaintiff state "with particularity" facts giving rise to a "strong inference" of scienter. *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) ("even in jurisdictions already employing the Second Circuit standard, the [PSLRA's] additional requirement that plaintiffs state facts 'with particularity' represents a heightening of that standard"); *accord Novak v. Kasaks*, 216 F.3d 300, 310 (2d Cir. 2000). Recently, the Supreme Court held that a private complaint will survive the PSLRA "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).

On the faulty premise, unsupported by any decision by the Second Circuit, that the pre-PSLRA "strong inference" standard applies to actions brought by the Commission, and despite the fact that the PSLRA does not apply to such actions,[4] O'Donnell nonetheless asks this Court to extend *Tellabs*' elevated requirements for pleading scienter to this case. O'Donnell Br. at 19. An extension of *Tellabs* to Commission enforcement actions is impermissible and would contravene the policy

---

[4]    The PSLRA does not apply because this case is brought by the Commission rather than a private party. *SEC v. Gold*, No. 05-CV-4713, 2006 WL 3462103, at *5 (E.D.N.Y. Aug. 18, 2006) ("It is well-settled that the SEC is not a private litigant and, thus, is not subject to the heightened scienter pleading requirements of the Private Securities Litigation Reform Act…." ); *SEC v. Prater*, 296 F. Supp. 2d 210, 215 (D. Conn. 2003) ("Since actions brought by the SEC are not considered 'private litigation,' the standard imposed in the PSLRA for pleading scienter does not apply to the SEC.").

underlying the different set of pleading requirements, recognized by the Supreme Court

itself, which Congress established for private actions under the PSLRA.[5]

Nonetheless, even if the *Tellabs* standard applies to the Commission's scienter

allegations,[6] the Commission has satisfied the standard and the Court can still find that

the Commission's allegations give rise to a strong inference of scienter.

### B.    The Complaint Adequately Alleges Scienter

#### 1.    O'Donnell Had A Motive And Opportunity To Commit Fraud

Allegations of motive are sufficient if they "entail concrete benefits that could be

realized by one or more of the false statements and wrongful nondisclosures alleged."

*Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).  Plaintiffs "must assert a concrete and

---

[5]    First, the Supreme Court rejected the notion that the PSLRA is merely an adoption of pre-PSLRA Second Circuit case law and made clear that its decision in *Tellabs* was interpreting only the PSLRA and its private action provisions, "geared to" Congress's goal of "curb[ing] perceived abuses of the §10(b) private action."  *See Tellabs*, 127 S. Ct. at 2504, 2508, 2509.  Second, Congress charged the Commission with primary responsibility for enforcing the federal securities laws and protecting the integrity of the nation's capital markets, and the concerns that Congress was addressing when it enacted the PSLRA did not (and do not) extend to Commission enforcement proceedings.  *Compare id.* at 2504, 2508 *and Merrill Lynch, Pierce, Fenner & Smith, Inc. v Dabit*, 126 S. Ct. 1503, 1510-11 (2006) *with* 15 U.S.C. §§ 78u(a)(1), 78u(d)(1)-78u(d)(5).  Accordingly, it is completely consistent with Congress's intent, and the Supreme Court's reasoning in *Tellabs*, for the elevated pleading standard to apply only to private lawsuits brought under the PSLRA.  Third, there are already numerous differences between Rule 9(b) and the PSLRA in terms of pleading requirements, and, therefore, declining to extend *Tellabs* to a Commission action would not create an unprecedented gap between the two.  *See, e.g.*, 15 U.S.C. §§ 78u-4(b)(1), 78u-5(c)(1).

[6]    The Commission is unaware, as of the date of this filing, of any court in the Second Circuit that has addressed the question of whether *Tellabs*' standard for pleading scienter applies to Commission enforcement proceedings.  In *Collins & Aikman Corp.*, the court noted, in a decision denying a motion to dismiss, that "[i]t is unclear whether district courts must now find that the inference of scienter raised in actions not governed by the PSLRA, but governed by Rule 9(b), be at least as compelling as any other inference."  524 F. Supp. 2d at 488.  The court declined to reach "this thorny (albeit interesting) issue" because the Commission had pled scienter even under this heightened standard.  *Id.*  Other post-*Tellabs* courts have ruled on motions to dismiss in Commission enforcement actions without discussing *Tellabs*. *See, e.g., SEC v. Dorozhko*, No. 07 CIV 9606, 2008 WL 126612 (S.D.N.Y. Jan. 8, 2008); *SEC v. Lyon*, 529 F.Supp.2d 444 (S.D.N.Y. 2008); *SEC v. Gad*, No. 07 CIV 8385, 2007 WL 4437230 (S.D.N.Y. Dec. 17, 2007); *SEC v. Power*, 525 F.Supp.2d 415 (S.D.N.Y. 2007); *but see SEC v. Boling*, No. 06 CIV. A. 1329, 2007 WL 2059744, at *6 (D.D.C. Jul. 13, 2007) (citing *Tellabs* three weeks after that decision was published for the proposition that a court must look at scienter allegations collectively, but doing so without any briefing by the parties on the issue); *SEC v. Goldsworthy*, No. 06 CIV. A. 10012, 2007 WL 4730345, at * 15 (D. Mass. Dec. 4, 2007) (following the *Tellabs* standard in the context of a motion for summary judgment and thereby adopting a more *plaintiff*-friendly pleading standard as previous First Circuit jurisprudence required courts to dismiss complaints if competing inferences were equally plausible).

personal benefit to the individual defendants resulting from the fraud." *Id.; see also In re Scholastic Corp. Sec. Litig.*, 252 F.3d at 74 ("Motive is the stimulus that causes a person or entity to act or to fail to act. Such stimulus ordinarily anticipates a concrete benefit defendant would realize by his conduct."). Opportunity "entail[s] the means and likely prospect of achieving concrete benefits by the means alleged." *Novak*, 216 F.3d at 307.

In this case, the complaint adequately alleges that O'Donnell had a motive to commit fraud; namely, that the compensation and fees he earned were directly linked to the amount of assets that were used to deceptively market time mutual funds. Compl. ¶¶ 1, 25, 46, 62. Indeed, in less than 16 months, O'Donnell earned $390,677 from placing deceptive market-timing trades for Millennium, *id*. ¶ 62, a substantial benefit that was undoubtedly "concrete and personal" to him, and therefore sufficient to demonstrate motive. *See Baxter v. A.R. Baron & Co.*, No. 94 Civ. 3913, 1996 WL 586338, at *3 (S.D.N.Y. Oct. 11, 1996) (Koeltl, J.) (finding motive properly pled with allegations that broker "realized commissions from the allegedly fraudulent sales of securities").

Although O'Donnell does not dispute that he had an opportunity to commit fraud, he erroneously claims that the complaint's allegations only amount to a generalized motive – his own economic self-interest – "that could be imputed to any similarly situated person engaging in legal practices," O'Donnell Br. at 21, which is insufficient to create a strong inference of scienter. However, far from alleging a non-particularized motive, the complaint alleges that O'Donnell handsomely profited from his fraudulent market-timing trading because his compensation was directly tied to the amount of assets that Millennium dedicated to such deceptive activity. Compl. ¶¶ 1, 25, 46, 62. As such, the more assets that O'Donnell was able to deceptively place – and continue placing – in

19

mutual funds, the more commissions he generated for himself. Accordingly, in less than

a year, O'Donnell opened at least fifty different Millennium accounts and used three

different FA identification numbers to invest a larger amount of Millennium's assets in

targeted mutual funds and to continue to place Millennium's market-timing trades in

those funds, despite their repeated attempts to block such investments. *Id.* ¶¶ 48, 54.

Accepting these allegations to be true and viewing them in the light most

favorable to the Commission, it is reasonable to infer that had O'Donnell not engaged in

these deceptive market-timing practices, and abided by the mutual funds' restrictions and

subsequent block and bar notices, O'Donnell would not have earned those asset-based

commissions and would have risked losing Millennium's business altogether.[7]  Courts

have found such allegations sufficient to plead motive.  *See Wedbush Morgan Sec., Inc.*

*v. Robert W. Baird & Co.*, 320 F. Supp. 2d 123, 130 (S.D.N.Y. 2004) (Koeltl, J.) (finding

broker-dealer's motive to knowingly assist a client in a fraudulent scheme that "brought

substantial business to" the broker-dealer was sufficient to show scienter); *Gruntal &*

*Co., Inc. v. San Diego Bancorp*, 901 F. Supp. 607, 613-14 (S.D.N.Y. 1995) (alleging that

broker was "eager to establish and build a client base and generate commission fees" and

could thus be receptive to participating in fraudulent activity adequately pled motive).[8]

Thus, "[a]ny facts that might call these inferences into question should be asserted, at the

---

[7]    Indeed, O'Donnell's asset-based commissions earned from the Millennium accounts ceased shortly *after* MSDW enforced new policies and procedures designed to prevent deceptive market-timing practices throughout the firm.  Compl. ¶ 6, Attachment B.

[8]    *See also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, No. 05 Civ. 9016(SAS), 2007 WL 528703, at *4 (S.D.N.Y. Feb. 20 2007) (alleging that administrator's "fees were tied directly" to a fund's net asset value demonstrated scienter based on motive); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 346 (S.D.N.Y. 2004) (alleging that defendant had "concrete motive to generate fees through sham valuations" was sufficient to plead scienter); *Joffee v. Lehman Bros., Inc.*, No. 04 Civ.3507, 2005 WL 1492101, at *12 (S.D.N.Y. Jun. 23, 2005) (alleging that an investment bank's false and misleading statements were made for a client "in order to obtain additional investment banking fees" satisfied the scienter pleading requirement); *Anitora Travel, Inc. v. Lapian*, 677 F. Supp. 209, 216 (S.D.N.Y. 1988) (alleging defendant's fraud allowed "him to earn commission on sales he might otherwise not have made" satisfied scienter requirement in RICO case).

earliest, after discovery."  *Dreieck Finanz AG v. Sun*, No. 89 CIV. 4347, 1990 WL

11537, at * 13 (S.D.N.Y. Feb. 9, 1990).

This Court's decision in *Baxter v. A.R. Baron & Co.* is particularly instructive.  In

that case, this Court ruled that allegations that a broker earned sales commissions directly

from the fraudulent sales of securities adequately pled motive:

> [A]llegations that [the broker] realized sales commissions
> from the allegedly fraudulent sales of securities to the
> plaintiffs . . . . is a direct pecuniary motive tied to the
> plaintiffs' purchases of securities and provides a sufficient
> motive for fraud. . . . [The broker] stood to gain directly
> from each trade by the plaintiffs based on his direct alleged
> misrepresentations and omissions.

1996 WL 586338, at *3 (internal citation omitted).  In the same way, the complaint's

allegations that O'Donnell earned commissions that were directly linked to his fraudulent

market-timing trades sufficiently creates a strong inference of scienter based on motive.[9]

## 2.    O'Donnell Acted With An Intent To Deceive Or Recklessness

Allegations of conscious misbehavior or recklessness are sufficient if the conduct

is "highly unreasonable" and "represents an extreme departure from the standards of

ordinary care to the extent that the danger was either known to the defendant or so

obvious that the defendant must have been aware of it."  *Kalnit*, 264 F.3d at 142.

Recklessness can be established when the complaint's allegations demonstrate that: (i)

---

[9]    Tellingly, O'Donnell can only rely on irrelevant cases which stand for the uncontroversial position – not present in this case – that allegations involving artificially inflated share prices and a generalized motive of corporate insiders to maintain or increase such prices do not provide a sufficient motive.  *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 170 (2d Cir. 2000) (remanding case to determine whether allegations of motive involving corporate officers and an inflated stock price sufficiently pled scienter); *Rombach v. Chang*, 355 F.3d at 177 (ruling that a non-particularized motive to artificially inflate or maintain an issuer's share price is not a sufficient motive for an issuer's officers to commit fraud).  Unlike an executive insider who has a generalized association with the overall profitability of his company and its share price, O'Donnell was a broker who personally gained and profited as a direct result of his fraudulent market-timing activity.  *See Baxter*, 1996 WL 586338, at *3 (highlighting that motive allegations that a broker earned fees directly from fraudulent trades were different from those cases which "held that a generalized interest in a high stock price by virtue of executive compensation tied to stock performance did not alone raise a sufficiently strong inference of scienter").

the defendant was aware of facts or had access to information contradicting his statements and thus he knew or should have known he was misrepresenting or omitting material facts, or (ii) the defendant failed to review or check information that he had a duty to monitor, or ignored obvious signs of fraud.  *Novak*, 216 F.3d at 308; *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 40 (2d Cir. 2000).

In this case, the complaint pleads specific facts from which a reasonable inference can be drawn that O'Donnell acted with the requisite intent to deceive or defraud. Indeed, the Commission's detailed allegations reveal a veritable cat and mouse game in which the mutual fund companies monitored activity in their funds for excessive trading, O'Donnell attempted to keep Millennium's excessive trading from being detected, the mutual funds identified some of Millennium's excessive trading and attempted to enforce their trading restrictions, and O'Donnell responded by using deceptive practices to continue executing market-timing trades for Millennium in those same funds.

Specifically, the complaint alleges that O'Donnell knew or was reckless in not knowing that mutual fund companies imposed restrictions on excessive trading to detect and prevent market timing.  Compl. ¶¶ 2, 3, 22-23.  Moreover, early on in his association with Millennium, he knew or was reckless in not knowing that they were engaged in trading practices that deceived mutual funds.  *Id.* ¶ 3.  O'Donnell's role in the scheme was more than mechanically executing Millennium orders; he also advised it on how to make deceptive market-timing trades**.**  *Id. ¶* 3.  O'Donnell was aware that funds were attempting to enforce their trading restrictions against Millennium.  *Id.* ¶ 59, Attachment B.  By trading through multiple FA identification numbers, accounts, and variable

annuity contracts, O'Donnell intended to, and did, make it more difficult for the funds to detect and prevent Millennium's market-timing trading. *Id.* ¶¶ 3, 28, 48, 54, 57, 60.

The Commission's detailed allegations about how O'Donnell executed market-timing trades for Millennium support a strong inference that he knew that he was involved in fraudulent activities. This inference is supported in a number of ways.

First, over a little more than one year, O'Donnell placed more than 1,300 market-timing trades for Millennium, with at least 35 mutual fund complexes, resulting in a total trading volume in excess of $1.5 billion. *Id.* ¶46.

Second, O'Donnell placed these trades using three different FA identification numbers. *Id.* ¶ 53. Although joint FA identification numbers were sometimes used at MSDW to allocate commissions for a shared customer, Millennium was not a shared customer. *Id.* ¶¶ 52, 56. To obtain these additional numbers, O'Donnell entered into joint production agreements with two other FAs. *Id.* ¶¶ 53, 56. These FAs had little or no role in establishing the Millennium customer relationship or servicing its accounts, received only 1% of the commissions, and were brought in more than six months after O'Donnell began trading for Millennium and only after he began receiving block and bar notices from mutual funds. *Id.* ¶¶ 46, 48, 53, 56, 59, Attachment B.

Third, O'Donnell placed these trades through almost fifty accounts. *Id.* ¶ 50. Each account bore the name of a different limited liability company that had no apparent relationship with Millennium. *Id.* These accounts were not used to segregate assets or to pursue different investment strategies. *Id.* ¶¶ 49-50. The timing and manner in which these accounts were opened suggest an effort to circumvent the mutual funds' trading restrictions. *Id.* ¶¶ 48, 49-51, 59-60, Attachment B.

Fourth, during the relevant time period, O'Donnell placed additional market-timing trades through at least ten variable annuity contracts. *Id.* ¶¶ 57-58. These were sham transactions designed to conceal Millennium market-timing trading. *Id.* ¶¶ 26-29, 58. Millennium did not need or want life insurance, nor was it interested in tax-deferred investing or retirement planning benefits associated with these investments. *Id.* ¶ 58. The additional fees associated with these investments also made it a more expensive and unnecessarily complicated way for Millennium to invest in mutual funds. *Id.* ¶¶ 26, 58.

Finally, over the course of a year, O'Donnell and his partners collectively received approximately 94 block and bar notices from mutual fund companies, asking them to stop or limit their trading for Millennium. *Id.* ¶ 59. Despite these repeated requests, O'Donnell continued to execute market-timing trades in the same funds through other Millennium accounts and with different FA identification numbers. *Id.* As a result of this subterfuge, mutual fund companies were fooled into processing additional transactions that they were trying to stop from him and Millennium. *Id.*

O'Donnell argues that the allegations in the complaint do not prove that the purpose of using multiple FA identification numbers, accounts, and variable annuity contracts was to make Millennium's market-timing activities difficult to detect and that there are other legitimate and plausible purposes for such practices. O'Donnell Br. at 5, 20. However, at this stage of the litigation, where the Court is required to draw all reasonable inferences in favor of the Commission, the Commission need not prove its allegations to the exclusion of all other possibilities. *See Druffner,* 353 F. Supp. 2d at 150. It need only set forth specific facts that give rise to a reasonable and strong

inference of O'Donnell's fraudulent behavior—which it has done.  That is all that the law requires.  Accordingly, O'Donnell's motion to dismiss should be denied.

### C.    The Complaint Also Adequately Alleges A Non-Scienter Claim

The Commission alleges in the First Claim that O'Donnell violated Section 17(a) of the Securities Act.  Sections 17(a)(2) and (3) do not require a showing of scienter.  To state a claim pursuant to Section 17(a)(2), the Commission must plead facts sufficient to show, at a minimum, that O'Donnell made a material misrepresentation or omission that he should have known was false or misleading, *i.e.*, that he was negligent.  Similarly, to state a claim pursuant to Section 17(a)(3), the Commission must plead facts sufficient to show, at a minimum, that O'Donnell negligently engaged in a transaction, practice, or course of business which operated as a fraud or deceit.  For the reasons outlined above, in section III(B), the complaint adequately alleges facts sufficient to establish O'Donnell's negligent conduct.  Accordingly, O'Donnell's arguments regarding the failure of the complaint to adequately allege scienter, do not reach this non-scienter claim.

### CONCLUSION

For the foregoing reasons, the motion to dismiss filed by O'Donnell should be denied.

Dated:  April 10, 2008                          Respectfully submitted,

                                                /s/  Jordan A. Thomas
                                                Jordan A. Thomas (JT-2886)
Local Counsel:                                  Paul E. Kim
Robert B. Blackburn (RB 1545)
                                                Securities and Exchange Commission
Of Counsel:                                     100 F. Street, N.E.
Christopher R. Conte                            Washington, DC 20549-4030
Mark Kreitman                                   Tel:  (202) 551-4475
Robert B. Hanson                                Fax:  (202) 772-9245